In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 15-1139

RUFINO ANTONIO ESTRADA-MARTINEZ,

*Petitioner*,

*v.*

LORETTA E. LYNCH, ATTORNEY GENERAL OF THE UNITED STATES,

*Respondent*.

_____

Petition for Review of an Order of
the Board of Immigration Appeals.

No. A073-223-323

_____

ARGUED SEPTEMBER 24, 2015 — DECIDED DECEMBER 31, 2015

_____

Before MANION, ROVNER, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Petitioner Rufino Antonio Es-trada-Martinez faces removal to Honduras, a country that he fled in 1994 after police there detained and tortured him. An immigration judge granted Estrada relief from removal, finding that he will more likely than not face torture if he is removed to Honduras. The Board of Immigration Appeals disagreed regarding the likelihood that Estrada will be tor-

tured, so it reversed the judge's grant of relief. Estrada has petitioned for review. He claims both eligibility for "withholding of removal" under the Immigration and Nationality Act ("the Act") and the United Nations Convention Against Torture ("the Convention") and eligibility for "deferral of removal" under only the Convention.

Estrada is not eligible for withholding of removal because he was convicted in an Illinois state court of statutory rape in 1996, and the Board has characterized his conviction as "particularly serious." Committing a crime that the Attorney General deems "particularly serious" bars withholding of removal under the Act and the Convention. We do not have jurisdiction to review that discretionary judgment unless a petitioner presents a legal or constitutional question, and Estrada's attempt to frame his challenge to the "particularly serious crime" determination as a legal issue is not persuasive.

Estrada may well be eligible, however, for deferral of removal under the Convention. As noted, the immigration judge found it more likely than not that Estrada will be tortured if he is removed to Honduras. The Board was required to review that factual finding only for clear error, not *de novo*. 8 C.F.R. § 1003.1(d)(3)(i); *Matter of Z-Z-O-*, 26 I. & N. Dec. 586, 590 (BIA 2015). In this case the Board failed to apply the clear error standard of review, so we reverse the Board with respect to Estrada's request for deferral of removal. We remand for reconsideration of the immigration judge's decision under the correct standard of review.

I.  *The Legal Framework*

A brief explanation of the relevant statutes and regulations will be helpful before we lay out the facts of Estrada's case. Estrada seeks relief from removal under three provisions of law: (1) withholding of removal under the Act, 8 U.S.C. § 1231(b)(3)(A); (2) withholding of removal under the Convention, 8 C.F.R. § 1208.16(c); and (3) deferral of removal under the Convention, 8 C.F.R. § 1208.17(a).

Commission of a crime that the Attorney General finds to be "particularly serious" bars withholding of removal under both the Act and the Convention. 8 U.S.C. § 1231(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d)(2). Aggravated felonies punished by at least five years of imprisonment are automatically "particularly serious." The Attorney General also has authority to determine that other criminal convictions are "particularly serious." 8 U.S.C. § 1231(b)(3)(B). In finding that a crime is "particularly serious," immigration authorities may examine "the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction." *In re N-A-M-*, 24 I. & N. Dec. 336, 342 (BIA 2007). In some cases, however, the Board has instead "focused exclusively on the elements of the offense, i.e., the nature of the crime." *Id.*

Even where an unauthorized immigrant has committed a "particularly serious crime," however, deferral of removal under the Convention remains available if he will "more likely than not" be tortured if removed to the particular country. 8 C.F.R. §§ 1208.16(c)(4) & 1208.17(a), In making this determination, immigration authorities must consider all relevant evidence including: (1) "Evidence of past torture inflicted upon the applicant;" (2) "Evidence that the appli-

cant could relocate to a part of the country of removal where he or she is not likely to be tortured;" (3) "Evidence of gross, flagrant or mass violations of human rights within the country of removal," and (4) "Other relevant information regarding conditions in the country of removal." *Id.*, §§ 1208.16(c)(3) & 1208.17(a).

II.  *Factual Background*

In 1993, Estrada led a peasant land takeover in Honduras. The land that he and his comrades occupied belonged to a retired military colonel, Avilio Martinez. Honduran police arrested Estrada and thirteen of his comrades, holding Estrada for two months. During that time, Estrada was tortured. His jailers beat him severely, sometimes to the point of unconsciousness. They suffocated him by putting a bag over his head, pushed his head under water to simulate drowning, subjected him to electric shocks, and threatened the lives of his family, including his two young children.

Shortly after his release from police detention and torture, a friend warned Estrada about a suspicious vehicle near Estrada's home, and his home was ransacked while he was away. Fearing for his safety, Estrada at first relocated within Honduras but then fled to Mexico and later to the United States. The United States granted him asylum in 1995.

Estrada settled in Chicago. He initially found work at a window and door company, and since 2005 he has worked as a flooring installer. He received services, including psychological care and help transitioning to life in the United States, from the Heartland Alliance, an organization dedicated to helping individuals recovering from torture.

In 1996, however, Estrada was charged with statutory rape for sexual acts with a sixteen-year-old girl with whom he worked at a restaurant. He was thirty-three years old at the time, and their relationship continued over a period of weeks or months. On the advice of his attorney, Estrada pled guilty. He was unaware of the potential immigration consequences of his plea. The judge sentenced Estrada to only four years of probation and also required him to register as a sex offender for ten years. Estrada successfully completed this sentence.

In December 2006, however, Estrada was ordered removed from the United States due to his conviction. Upon his arrival in Honduras in 2007, police at the airport detained him, beat him, found some paperwork referring to his conviction, and threatened to create a file on him if he did not pay them. Estrada paid the extortion, and the police freed him. He spent a week in the city where his parents lived, then returned illegally to the United States because he continued to fear for his safety in Honduras.

Estrada has not heard directly from the retired Colonel Martinez since leaving Honduras in 1994, but in 2006 he received a letter from his father telling him that Martinez had continued to make threats against him and would kill him if he returned to Honduras. A 2014 letter from one of Estrada's comrades in the land invasion also reported that Martinez was still looking for Estrada. Estrada's wife and children remained in Honduras safely for three or four years after Estrada fled, but they have since come to the United States. His parents remain in Honduras. Estrada's comrades in the land invasion continue to farm the land they invaded, apparently without trouble. Estrada believes that if he returns to Hon-

duras he will be specially targeted because he was the leader of the land invasion.

In 2013, U.S. immigration agents arrested Estrada. The government reinstated his earlier order of removal, but Estrada expressed a fear that he will be tortured if he is removed to Honduras. These proceedings for withholding of removal under the Act and the Convention and deferral of removal under the Convention followed.

In 2014, an immigration judge granted Estrada relief from removal. She held that Estrada's statutory rape conviction was not "particularly serious," citing his lenient sentence and his testimony that he believed his victim was eighteen years old. The judge also found that Estrada was eligible for withholding of removal under the Act and the Convention because he established that it is more likely than not that he will be tortured if he is removed to Honduras. The judge credited Estrada's testimony regarding his treatment in Honduras. She relied on his past torture, his continued fear of arrest and torture after he relocated within Honduras in 1993 and 1994, the 2006 letter indicating that Martinez had made continued threats against Estrada, Martinez's continuing connections to the Honduran police and military, and Estrada's 2007 arrest, beating, and extortion at the airport in Honduras.

The judge also referred to U.S. State Department and United Nations High Commissioner for Refugees reports on political violence in Honduras.[1] She noted that Honduras

---

[1] The record contains Human Rights Watch reports on Honduras that are marked with the High Commissioner's logo but are not official High Commissioner reports. The record does not appear to contain offi-

continues to suffer from violence surrounding peasant land disputes. These disputes can involve detention, torture, and even killing of peasant leaders and human rights activists. The police are sometimes involved in or complicit with this violence. Police detainees in Honduras are sometimes tortured and denied due process of law.

The Board of Immigration Appeals reversed the judge's decision both as to the "particularly serious crime" determination and the likelihood that Estrada will be tortured if he returned to Honduras. With regard to the likelihood of torture, the Board labeled only one of the judge's specific factual findings clearly erroneous: the finding that Estrada was not free from ongoing torture after he relocated within Honduras in 1993 and 1994 immediately after he was released from custody and torture. After identifying this one instance of clear factual error, the Board proceeded to reweigh the evidence considered by the judge. The Board said it was "not persuaded" that Estrada will likely be tortured if he is removed to Honduras. It noted that Estrada has not received any threats directly from Martinez since coming to the United States and that the other peasant activists appear to have been able to remain on the land safely. With regard to the "particularly serious crime" determination, the Board considered Estrada's sentence and noted that statutory rape involves an inherent risk of exploitation of minors. It considered but declined to give weight to Estrada's victim's age and Estrada's claimed mistake about her age. Estrada then filed this petition for judicial review.

---

cial High Commissioner reports. It is possible that the immigration judge confused these Human Rights Watch reports with official High Commissioner reports.

III. *Jurisdictional Limits*

We must first address the jurisdictional limits of judicial review under the Immigration and Nationality Act. First, 8 U.S.C. § 1252(a)(2)(B)(ii) prohibits courts of appeals from reviewing decisions assigned by statute to the discretion of the Attorney General or Secretary of Homeland Security. See *Kucana v. Holder*, 558 U.S. 233, 237 (2010). Second, § 1252(a)(2)(C) prohibits review of "any final order of removal" where removability is based on, among other things, the commission of an aggravated felony. Notwithstanding these provisions, however, § 1252(a)(2)(D) permits the review of "constitutional claims or questions of law." There is some disagreement among the circuits on the effects of these provisions, but we follow this circuit's precedents.

It is settled in this circuit that § 1252(a)(2)(C) does not prohibit our review of orders denying deferral of removal under the Convention. *Lenjinac v. Holder*, 780 F.3d 852, 855 (7th Cir. 2015) (noting that "deferral of removal is not a final remedy and therefore the [Act] does not bar judicial review"); *Issaq v. Holder*, 617 F.3d 962, 970 (7th Cir. 2010) (stating that § 1252(a)(2)(C) does not bar our review of denial of deferral of removal under the Convention). Deferral of removal is "like an injunction" and "can be final enough to permit judicial review, but at the same time not be the kind of 'final' order covered by § 1252(a)(2)(C)." *Wanjiru v. Holder*, 705 F.3d 258, 264 (7th Cir. 2013); contra, e.g., *Ortiz-Franco v. Holder*, 782 F.3d 81, 86–87 (2d Cir. 2015) (listing precedents), petition for cert. filed (U.S. Sept. 23, 2015) (No. 15-362). Section 1252(a)(2)(C) does not prohibit our review of the Board's decision to deny Estrada deferral of removal. And in any

case, § 1252(a)(2)(D) permits us to review constitutional claims and questions of law.

Under our circuit's precedent, however, § 1252(a)(2)(B)(ii) prohibits our review of the Board's discretionary determination that Estrada's statutory rape conviction is a "particularly serious crime," except for legal and constitutional questions allowed under § 1252(a)(2)(D). *Tunis v. Gonzales*, 447 F.3d 547, 549 (7th Cir. 2006); see also *Petrov v. Gonzales*, 464 F.3d 800, 802 (7th Cir. 2006) (citing *Tunis* for proposition that "classification of a particular crime as 'particularly serious' often is discretionary" and thus § 1252(a)(2)(B)(ii) bars review).[2] As noted above, the determination that a crime is "particularly serious" bars withholding of removal under both the Act and the Convention, but does not bar deferral of removal under the Convention. 8 U.S.C. § 1231(b)(3)(B)(ii); 8 C.F.R. §§ 1208.16(d)(2) & 1208.17(a).

The Attorney General argues that § 1252(a)(2)(C) rather than § 1252(a)(2)(B)(ii) precludes our review of the "particularly serious crime" determination. For this proposition, the

---

[2] Other circuits disagree that § 1252(a)(2)(B)(ii) precludes review of the Attorney General's determination that a crime is "particularly serious." See, e.g., *Arbid v. Holder*, 700 F.3d 379, 383–84 (9th Cir. 2012) (recognizing shift in Ninth Circuit precedent following *Kucana*); *Berhane v. Holder*, 606 F.3d 819, 821–23 (6th Cir. 2010) (citing *Kucana* for proposition that "[t]o 'specify' that a decision belongs to the Attorney General's discretion requires more than a hint"); *Nethagani v. Mukasey*, 532 F.3d 150, 154–55 (2d Cir. 2008); *Alaka v. Attorney Gen. of the U.S.*, 456 F.3d 88, 95 (3d Cir. 2006), as amended Aug. 23, 2006 ("The jurisdiction-stripping language of § 1252(a)(2)(B)(ii) applies not to all decisions the Attorney General is entitled to make, but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion.").

Attorney General cites *Petrov*, 464 F.3d at 801–02, and *Ali v. Achim*, 468 F.3d 462, 470 (7th Cir. 2006). *Petrov*, however, stated that a discretionary determination that a crime is "particularly serious" is unreviewable under § 1252(a)(2)(B)(ii), not § 1252(a)(2)(C). 464 F.3d at 802. *Ali* did not specify between the two statutory provisions. 468 F.3d at 465, 468–70. The plain language of § 1252(a)(2)(B)(ii), precluding review of decisions left by statute to the "discretion" of the Attorney General or Secretary of Homeland Security, fits with the decision involved in characterizing a crime as "particularly serious," which we have previously said "often is discretionary." See *Petrov*, 464 F.3d at 802. Thus, absent a legal or constitutional issue, § 1252(a)(2)(B)(ii) bars review of a discretionary decision that a crime is "particularly serious." 8 U.S.C. § 1252(a)(2)(B)(ii) & (a)(2)(D).

IV. *This "Particularly Serious Crime" Determination*

Estrada tries to avoid this jurisdictional bar to our review of the Board's "particularly serious crime" determination by framing his challenge as a legal issue. He argues that the Board made a legal error by adopting a categorical approach to deciding whether his statutory rape conviction was "particularly serious." According to Estrada, the Board failed to consider individual aspects of his conviction. He claims the Board "ignored" the fact that his victim was sixteen years old, erroneously discounted his mistake of age, and failed to recognize the significance of his sentence of probation rather than prison time. Although Estrada presents cogent arguments for reweighing the factors leading to the Board's "particularly serious crime" determination, his attempt to frame this argument as a legal error is not convincing. We lack jurisdiction to review the Board's weighing of these factors.

There are different threads of Board authority regarding how to determine that a crime is "particularly serious." Estrada is right that Board precedent identifies certain factors that may be considered in determining whether a crime is "particularly serious." *In re N-A-M-*, 24 I. & N. Dec. 336, 342 (BIA 2007); *Matter of Frentescu*, 18 I. & N. Dec. 244, 247 (BIA 1982), superseded in part by statute as recognized in *In re N-A-M-*, 24 I. & N. Dec. at 339–40. The Board may use a case-by-case approach in this analysis. *Ali*, 468 F.3d at 470 (holding that it is not legal error for the Board to apply a case-by-case analysis). However, the Board has also sometimes "focused exclusively on the elements of the offense, i.e., the nature of the crime." *In re N-A-M-*, 24 I. & N. Dec. at 342–43. Board precedent appears to support more than one method for determining whether a crime is "particularly serious."

Here, however, we do not agree with Estrada that the Board's opinion used a categorical approach. Rather than ignoring the age of the victim, the Board considered but declined to give weight to the fact that the victim was sixteen rather than a younger age. It said it did so because of the inherent risk of exploitation in a sexual relationship between an adult and a minor. The Board also considered but declined to give "great weight" to Estrada's claim, which the immigration judge credited, that he did not know his victim was a minor, noting that Estrada chose not to pursue a mistake-of-age defense.[3] The Board also considered the length of

---

[3] The Board's decision not to give weight to the absence of a mistake-of-age defense was not legal error, despite Estrada's choice to plead guilty. Estrada could have refused to plead guilty and defended based on mistake of age. Following this reasoning, the Board found that the immigration judge clearly erred "to the extent" that the judge found that Estrada's claimed mistake of age did not conflict with the sentence he

Estrada's probation and the requirement that he register as a
sex offender. The requirement that Estrada register as a sex
offender may have been mandatory under state law, but the
length of probation was certainly a discretionary decision by
the sentencing judge.

This analysis by the Board was not an application of the
categorical approach. The categorical approach would look
only at the "statute defining the crime of conviction," not the
actual underlying conduct and circumstances. *Moncrieffe v.
Holder*, 569 U.S. —, —, 133 S. Ct. 1678, 1684 (2013), quoting
*Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186 (2007). Here, the
Board considered the punishment imposed on Estrada—the
length of the term of probation and the requirement that he
register as a sex offender. The Board also analyzed but did
not find persuasive the age of the victim and Estrada's claim
of ignorance as to the victim's age. Whether or not we would
agree in the first instance, it is clear that the Board's analysis
engaged with factors beyond just the statute defining the
crime of conviction.

Thus, Estrada does not succeed in framing his argument
against the Board's "particularly serious crime" determina-
tion as legal error. To the extent that Estrada also argues that
the Board's decision incorrectly weighed the relevant factors,
those arguments are beyond our jurisdiction. 8 U.S.C.
§ 1252(a)(2)(B)(ii).

---

received. This logic is not compelling, but the question is beyond our
jurisdiction.

V.  *Deferral of Removal*

Despite the determination that his statutory rape conviction was "particularly serious," Estrada may still be eligible for deferral of removal under the Convention. 8 C.F.R. §§ 1208.16(c)(4) & 1208.17(a). The decisive factual issue in this analysis is whether it is "more likely than not" that the unauthorized immigrant will be tortured if removed to the country for which he or she seeks deferral of removal. *Id.*

The likelihood that Estrada will be tortured is a question of fact. *Rosiles-Camarena v. Holder*, 735 F.3d 534, 538–39 (7th Cir. 2013); *Matter of Z-Z-O-*, 26 I. & N. Dec. 586, 590 (BIA 2015). Here, the immigration judge found that it is more likely than not that Estrada will be tortured if removed to Honduras. The Board reversed, stating that it was "not persuaded" of the likelihood of torture.

The Board's approach to this factual issue reflects a legal error. Under the Board's own regulations, its review of an immigration judge's finding of fact is limited. The Board must not find facts in the first instance; it must review the judge's determinations of fact only for clear error. 8 C.F.R. § 1003.1(d)(3)(i); *Matter of Z-Z-O-*, 26 I. & N. Dec. at 590.[4]

---

[4] This limited review of fact-finding is distinct from that of other agencies that have not circumscribed through regulation their review of their administrative law judges' fact-finding. For example, the Occupational Safety and Health Review Board is not bound by fact and credibility determinations made by an administrative law judge, although those determinations are entitled to "some weight," and there must be substantial evidence for rejecting them. *Pratt & Whitney Aircraft v. Sec'y of Labor*, 649 F.2d 96, 105 (2d Cir. 1981); *Allis-Chalmers Corp. v. Occupational Safety & Health Review Comm'n*, 542 F.2d 27, 30 (7th Cir. 1976). Similarly, the National Labor Relations Board is not bound by an administrative

Whether the Board applied the proper standard of re-view is a legal question. *Rosiles-Camarena*, 735 F.3d at 536. We therefore review *de novo* whether the Board exceeded its clear-error scope of review. See *Lenjinac*, 780 F.3d at 854; *Vitug v. Holder*, 723 F.3d 1056, 1062–63 (9th Cir. 2013); *Kabba v. Mukasey*, 530 F.3d 1239, 1245 (10th Cir. 2008) (reviewing *de novo* as a question of law "whether the BIA *applied* the correct legal standard, not simply whether it *stated* the correct legal standard") (emphasis in original).

The clear-error standard of review precludes the Board from simply reweighing the evidence to reverse the immigration judge. According to the agency commentary on the final regulation mandating clear-error review, a judge's "factfinding may not be overturned simply because the Board would have weighed the evidence differently or decided the facts differently had it been the factfinder." Board of Immigration Appeals: Procedural Reforms to Improve Case Management, 67 Fed. Reg. 54878-01, 54889 (Executive Office for Immigration Review, Immigration and Naturalization Service August 26, 2002), citing *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985). Rather, "the BIA must find that, on balance, the weight of the evidence so strongly militates against the IJ's finding that the BIA 'is left with the definite and firm conviction that a mistake has been committed.'" *Zhou Hua Zhu v. U.S. Attorney Gen.*, 703 F.3d 1303, 1315 (11th Cir. 2013), quoting 67 Fed. Reg. at 54889; see also *An-*

---

law judge's factual findings, although those factual findings are entitled to weight as part of the record, and the Board holds itself to a "clear pre-ponderance of the evidence" standard in overturning a judge's credibil-ity determinations. *Slusher v. NLRB*, 432 F.3d 715, 727 & n.5 (7th Cir. 2005); *In re Robert F. Kennedy Med. Ctr.*, 336 NLRB 765, 765 n.2 (2001).

*derson*, 470 U.S. at 573 (quoting the same standard). The Board must explain how the immigration judge clearly erred. *Vitug*, 723 F.3d at 1063.

Federal Rule of Civil Procedure 52(a)(6) helps to illuminate the Board's burden in overturning an immigration judge's factual findings. We have noted that Rule 52(a)(6) "may have been the inspiration for § 1003.1(d)(3)(i)," the regulation requiring the Board to review immigration judges' factual findings for clear error. See *Rosiles-Camarena*, 735 F.3d at 538. Indeed, the Board's own commentary on the regulation cited *Anderson v. Bessemer City*, the case providing the definitive interpretation of Rule 52(a)(6)'s clear-error standard. 67 Fed. Reg. at 54889–90, citing *Anderson*, 470 U.S. at 573–75.[5]

---

[5] Many circuits use the *Anderson* standard to evaluate whether the Board adhered to its required clear-error standard of review. See, e.g., *Zumel v. Lynch*, 803 F.3d 463, 475–76 (9th Cir. 2015) (using the *Anderson* standard in concluding that the Board exceeded its proper clear-error scope of review of an immigration judge's finding, noting that the Board did not explain "why the [judge's] determination … was 'illogical or implausible, or without support in inferences that may be drawn from the facts in the record'"), quoting *Rodriguez v. Holder*, 683 F.3d 1164, 1170 (9th Cir. 2012); *Zhou Hua Zhu*, 703 F.3d at 1309 (stating that the "the Department explicitly adopted the standard for clear error drawn from Supreme Court case law" in holding that the Board impermissibly failed to apply a clear-error standard in reviewing an immigration judge's findings regarding the likelihood of an immigrant's future persecution and current country conditions); *Alvarado de Rodriguez v. Holder*, 585 F.3d 227, 235–36 (5th Cir. 2009) (citing *Anderson* in holding that Board impermissibly failed to apply clear-error standard of review in overturning an immigration judge's findings and credibility determinations regarding whether an immigrant entered into a marriage in good faith); *Kabba v. Mukasey*, 530 F.3d 1239, 1246 (10th Cir. 2008) (citing *Anderson* in holding that the Board failed to apply the required clear-error standard in over-

Rule 52(a)(6) prohibits courts of appeals from setting aside a district court's factual findings unless they are clearly erroneous. Under that standard, "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574. A factual finding must be "illogical or implausible" or lack "support in inferences that may be drawn from the facts in the record" for an appellate court to overturn it on clear error review. *Id.* at 577. When a fact-finder bases her finding on a decision to credit a witness's testimony, that finding "can virtually never be clear error" as long as the testimony is "coherent and facially plausible," "not internally inconsistent," and "not contradicted by extrinsic evidence." *Id.* at 575.

Here, the Board exceeded the permissible scope of its review. It did not explicitly find that the immigration judge's finding regarding the likelihood of torture was clearly erroneous. Instead, it reversed the immigration judge because it was "not persuaded that the objective evidence establishes that the applicant will likely be tortured in Honduras upon his return." We assume this would have been a sufficient reason for reversal on review *de novo*, but it overstepped the more limited bounds of clear-error review.

The Board identified only one debatable instance of "clear error" in the immigration judge's fact-finding, although we will assume its validity for our purposes. The

turning an immigration judge's credibility determination); *Fen Yong Chen v. Bureau of Citizenship & Immigration Servs.*, 470 F.3d 509, 514–15 (2d Cir. 2006) (citing *Anderson* standard in holding that the Board failed to apply the required clear-error standard in rejecting an immigration judge's credibility determination).

Board found that the judge's determination that Estrada "was not free from ongoing torture or harm after relocating within Honduras" was "clearly erroneous." This finding of clear error appears to be correct to the extent the judge found that Estrada was actually tortured in the time period between fleeing his village in Honduras and escaping to the United States. As best we can tell, Estrada was not actually tortured during that period, though he had ample reason to fear torture. After his release from the detention and torture, he reported sightings of a suspicious vehicle near his home, and his house was ransacked while he was away. In context, it is at least arguable that the immigration judge was instead referring to the threat of torture during the time Estrada remained in Honduras rather than to actual torture, but for our purposes we will assume that finding was clearly erroneous.

This one instance of arguable clear error does not by extension make the judge's finding regarding Estrada's likelihood of torture also clearly erroneous. See *Rosiles-Camarena*, 735 F.3d at 538–39 (holding that the Board must review for clear error even "ultimate" facts that are based on other subsidiary facts). The judge based her likelihood-of-torture finding on many undisputed subsidiary facts, such as Estrada's actual torture while in police custody, the 2006 threat against Estrada, Martinez's continued connections to the Honduran security apparatus, and the reported country conditions in Honduras. The (presumed) fact that Estrada was not again tortured while in Honduras following his release does not make the judge's determination that Estrada will likely be tortured if he is returned to Honduras implausible or illogical. See *Anderson*, 470 U.S. at 577, 579 (holding that a district court's fact-finding was not clearly erroneous because it did

not meet those criteria). The judge's likelihood-of-torture de-termination was still a "permissible" view of the evidence, which the Board could not overturn simply because, "had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 574; see also *Rosiles-Camarena*, 735 F.3d at 538–39 (reversing and remanding a Board deci-sion based on Board's "independent appellate decision on *facts*") (emphasis in original).

The Board's opinion demonstrates its impermissible re-weighing of the evidence to reverse the judge's finding re-garding Estrada's likelihood of torture. The judge found Es-trada's testimony regarding his experience in Honduras can-did and credible. The Board did not dispute the judge's find-ings that Estrada was previously tortured at the direction of Colonel Martinez for his leadership role in the peasant take-over of Martinez's land, nor that Martinez continues to have close connections to the Honduran military and police. The Board discounted these facts, however, stating that "the rel-evant facts are not frozen at the time of the applicant's depar-ture from Honduras in 1994." The Board conceded that Es-trada's fear of torture is consistent with the current condi-tions in Honduras but said this was "not enough" to con-vince it that Estrada is likely to face torture if he is removed. Similarly, the Board acknowledged the threats made against Estrada as recently as 2006, but it discounted these threats, saying that Estrada has heard nothing directly from Mar-tinez since he left Honduras and that his mistreatment by police at the airport in 2007 had nothing to do with his lead-ership in the land invasion. Finally, while the judge declined to give weight to the fact that Estrada's peasant comrades in the land invasion remain on the land without trouble, the Board chose to view this as significant.

The Board's treatment of these factual matters shows that the Board, rather than reviewing the judge's findings of fact for clear error as required by regulation, instead reweighed the evidence to come to a conclusion different from the judge's. The Board did not conclude that the judge's finding regarding Estrada's likelihood of torture was "illogical or implausible" or lacked "support in inferences that can be drawn from facts in the record." See *Anderson*, 540 U.S. at 577; see also *Zumel*, 803 F.3d at 476 (concluding that the Board exceeded its proper clear error scope of review of an immigration judge's finding because the Board did not explain "why the [judge's] determination … was 'illogical or implausible, or without support in inferences that may be drawn from the facts in the record'"). The Board also did not find that Estrada's testimony, which the judge credited and upon which she in part based her finding, was incoherent, facially implausible, internally inconsistent, or contradicted by extrinsic evidence. See *Anderson*, 470 U.S. at 575. Thus, the Board made a legal error by failing to apply the required clear-error standard. See *Rosiles-Camarena*, 735 F.3d at 539.

VI. *Disposition of the Petition*

The question remains how to remedy the Board's legal error. Generally, if an agency commits legal error, we remand the decision to the agency for proceedings under the correct legal framework. *E.g., Rosiles-Camarena*, 735 F.3d at 539, citing *Gonzales v. Thomas*, 547 U.S. 183 (2006); *Zhou Hua Zhu*, 703 F.3d at 1315. The agency is entitled to make factual determinations and to have an opportunity to apply the law to those facts. *Gonzales*, 547 U.S. at 186. Remand is also generally required when a question of law implicates an agen-

cy's interpretation of the statute it enforces. *Negusie v. Holder*, 555 U.S. 511, 523 (2009).

Remand is not always necessary, however. Courts of appeals have declined to remand when the facts are established and the correct outcome is clear. For example, in *Vitug*, the Ninth Circuit held that the Board failed to review the immigration judge's factual findings under the proper clear-error standard of review. 723 F.3d at 1064. The Ninth Circuit directed withholding of removal for the petitioner because "no reasonable factfinder" could come to a different conclusion based on the immigration judge's uncontroverted findings. *Id.* at 1065–66; see also *Ghebremedhin v. Ashcroft*, 392 F.3d 241, 243 (7th Cir. 2004) (court has ability to decide petition on merits without remand if "the record evidence compels the result that we have reached," but case was remanded on other grounds). In the majority of cases in which the Board applied the incorrect standard of review, however, courts of appeals remand for further consideration under the correct standard of review. See, e.g., *Rosiles-Camarena*, 735 F.3d at 539; *Ridore v. Holder*, 696 F.3d 907, 919 (9th Cir. 2012).

The facts in this case are not in dispute. The immigration judge and Board did not question the veracity of Estrada's evidence of his past torture, the 2006 threat against him, Martinez's continuing influence with Honduras's security apparatus, and the continuing conditions of violence against leaders of peasant movements in Honduras. Honduran peasant leaders continue to experience violence and human rights abuses committed by police. Based on these undisputed facts, the immigration judge concluded that Estrada will more likely than not be tortured if he is removed to Honduras. That finding appears cogent and well supported by

credible evidence regarding both Estrada's individual case and more general conditions of violence in Honduras. We nevertheless remand this case to the Board to apply clear error review. Unless the Board determines that the judge's finding regarding the likelihood of torture was clearly erroneous, Estrada is entitled to deferral of removal under the Convention.

To sum up, we DISMISS for lack of jurisdiction Estrada's challenge to the Board's decision that his statutory rape conviction was a "particularly serious crime." We also find, however, that, on the issue of deferral of removal under the Convention Against Torture, the Board failed to apply the correct standard of review to the immigration judge's finding that Estrada will likely face torture if he is removed to Honduras. In that respect we GRANT Estrada's petition and REMAND his case to the Board of Immigration Appeals for further proceedings consistent with this opinion.

MANION, *Circuit Judge*. I join the panel's decisions to affirm the Board of Immigration Appeals, with this note. Implicit in the Board's statement that "the relevant facts are not frozen at the time of [Estrada's] departure from Honduras in 1994" is the fact that the Martinez family's connections to the police and military may not remain intact. The CAT allows "deferral" of removal. Martinez was a retired colonel at least 22 years ago. That connection to the government, possibly along with his sons' police connections, appears necessary to the claimed risk of torture. If Martinez is dead and his police-officer sons pose no problem, the CAT deferral should end. CAT protection should not be speculative. To determine whether the precise threat to Estrada still exists, the Board may need to remand this case to the immigration judge.