NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 4, 2020[*]
Decided March 11, 2020

**Before**

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-1760

| | |
|---|---|
| MUHANNAD MUSTAFA SALIM, *Petitioner*, | Petition for Review of an Order of the Board of Immigration Appeals. |
| *v.* | No. A078-872-478 |
| WILLIAM P. BARR, Attorney General of the United States, *Respondent*. | |

**O R D E R**

Muhannad Mustafa Salim, a 51-year-old citizen of Jordan, applied for asylum, withholding of removal, and protection under the Convention Against Torture because he fears harm in Jordan based on his conversion to Christianity. An immigration judge, followed by the Board of Immigration Appeals, denied relief. The Board ruled that a prior state conviction was an aggravated felony and a "particularly serious crime," 8 U.S.C. §§ 1158(b)(2)(A)(ii) and 1231(b)(3)(B)(ii), so Salim was ineligible for asylum and

---

[*] We agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

withholding of removal. It also ruled that Salim failed to establish under the CAT that it was more likely than not that he would face torture in Jordan. Salim now rightly argues that his burglary conviction is no longer a categorical aggravated felony; he says, therefore, that he is eligible for asylum and withholding relief. But because the Board's unreviewable discretionary ruling that his conviction was a "particularly serious crime" (for purposes of withholding of removal) applies to his asylum eligibility, we deny his petition. We also affirm the Board's determination that Salim failed to meet his burden for relief from removal under the CAT.

Salim was born in Palestine, grew up in Jordan, and entered the United States with a nonimmigrant visa in 1991, which permitted him to stay for six months. He overstayed. While in the United States, he married and started a family, but he separated from his wife and then later divorced in 2011. After the separation Salim had a restraining order placed against him and was ordered not to contact his wife. But in June 2010 Salim broke into his wife's house while wearing a wig, poisoned his son's fish, and stole some of his wife's undergarments. His wife and son were in the house at the time. Consequently, he was convicted of felony burglary under section 943.10(1m)(a) of the Wisconsin Statutes and two counts of felony stalking, and was cumulatively sentenced to five and one-half years in prison.

While in prison Salim converted to Christianity. He attended both Muslim and Christian services because he feared consequences if people learned of his conversion to Christianity. When Salim informed family members in Jordan of his conversion, they did not approve, and according to Salim, one family member threatened to kill him.

Meanwhile, the Department of Homeland Security initiated removal proceedings against Salim before an immigration judge. The IJ held several hearings from 2015 through 2017, at which Salim testified that if he returned to Jordan, he would be in danger of being killed or tortured because of his conversion to Christianity. Although people who are born Christian are safe in Jordan, converts from Islam are considered "apostates," Salim explained, and are therefore at risk of violence.

Salim did not receive relief from removal. First, the IJ ruled that Salim was ineligible for asylum. His burglary conviction (with a sentence of more than a year in prison), the IJ said, was an aggravated felony that made it per se a "particularly serious crime" for asylum purposes. *See* 8 U.S.C. §§ 1101(a)(43) and (h), 1158(b)(2)(A)(ii). (Under § 1158(b)(2)(A)(ii) an alien is not eligible for asylum if "the alien, having been convicted

by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States.")

The IJ then determined that he was also ineligible for withholding of removal. But the sentence for his burglary conviction was not long enough to count as a per se "particularly serious crime" for withholding purposes. § 1231(b)(3)(B)(ii), 8 C.F.R. § 1208.16(d)(2). The IJ nonetheless concluded that based on the additional facts, including that Salim entered a dwelling with the intent to stalk, the crime was in fact particularly serious. The IJ ruled alternatively that Salim had not shown that it was more likely than not that he would be persecuted if he were removed to Jordan. 8 C.F.R. § 1208.16(b); *see also INS v. Stevic*, 467 U.S. 407, 424 (1984). Similarly, the IJ decided that Salim had failed to meet his burden under the CAT because he had not shown that it was more likely than not that he would be tortured if removed to Jordan. 8 C.F.R. §§ 1208.16, 1208.17, 1208.18. The Board of Immigration Appeals dismissed Salim's appeal, affirming that Salim was ineligible for asylum and withholding of removal because of his burglary conviction and further affirming that he had failed to meet his burden under the CAT.

We pause to assess our jurisdiction. The government contends that under 8 U.S.C. § 1252(a)(2)(B)(ii) we lack jurisdiction over the agency's ruling on Salim's asylum eligibility because it was "discretionary" for the IJ to decide that burglary was a particularly serious crime. *See Estrada-Martinez v. Lynch*, 809 F.3d 886, 892 (7th Cir. 2015). The IJ may determine whether a crime is particularly serious by taking a categorical or case-by-case approach. *Id.* at 893. The categorical approach looks "not to the facts of the particular … case," but to whether "the state statute defining the crime of conviction categorically fits within the 'generic' federal definition of a corresponding aggravated felony." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (quotation marks omitted). That approach is a legal ruling that we could review. 8 U.S.C. § 1252(a)(2)(D). But a decision resting on the particular facts of the crime is a discretionary one that we lack jurisdiction to review. *Estrada-Martinez*, 809 F.3d at 893–94.

Here, the IJ made a categorical, rather than discretionary, decision about Salim's asylum eligibility, and the Board affirmed that determination. The IJ wrote that she "look[ed] not to the particular facts of the case but instead to the minimum conduct that is required for a conviction, and then determine[d] whether that conduct necessarily involves facts that equate to the generic definition of the offense." She then noted that Salim's crime was "categorically" an aggravated felony and a "per se" particularly serious crime. Because this is a legal issue, we may review it.

Assured of our jurisdiction, we proceed to the merits. Salim first contends that his burglary conviction is no longer an aggravated felony or a particularly serious crime, so we should reverse the Board's ruling that he is ineligible for asylum. Salim incorrectly relies on *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), which concerned a different provision, § 1101(a)(43)(F) (crime of violence), than the one that made Salim's conviction an aggravated felony, § 1101(a)(43)(G) (theft or burglary). Nonetheless, Salim is correct that his conviction is no longer a categorical aggravated felony. The IJ reasoned that Wisconsin burglary includes all the elements of the generic federal offense of burglary, defined in *Taylor v. United States*, 495 U.S. 575, 598 (1990). But in *United States v. Franklin*, the Wisconsin Supreme Court held that Wisconsin burglary is *broader* than federal burglary, 928 N.W.2d 545, 553 (Wis. 2019), after we had certified the question to that court, *United States v. Franklin*, 895 F.3d 954, 961–62 (7th Cir. 2018).

The government responds that the error is harmless. It says that we should deny Salim's petition because the Board's decision about his ineligibility for withholding of removal would make a remand on asylum futile. As a general matter, we cannot affirm an agency's decision on grounds not articulated by the agency. *SEC v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947). But we will not remand an agency's decision where doing so would be futile because the result is obvious. *Thornburgh v. Am. Coll. of Obstetricians & Gynecologists*, 476 U.S. 747, 756 n.7 (1986), *overruled on other grounds by Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992); *Lopez v. Lynch*, 810 F.3d 484, 491–92 (7th Cir. 2016) (applying the futility doctrine to a denial of a petition for rehearing).

A remand on asylum would be futile. In its withholding analysis, the Board ruled that Salim's burglary offense was a particularly serious crime warranting removal. The Board has the discretion to decide in the asylum context that a nonaggravated felony is a particularly serious crime. *Ali v. Achim*, 468 F.3d 462, 469 (7th Cir. 2006). The Board's decision that Salim is ineligible for withholding makes it obvious that had his burglary conviction not been an aggravated felony, the Board still would have decided that it was a particularly serious crime.

Because categorical ineligibility for withholding requires a longer prison sentence on the underlying offense than is required for asylum, Salim appears to argue that we should review the Board's decision on withholding. But in deciding that Salim is ineligible for withholding, the Board made a case-specific, not categorical, ruling. The IJ and the Board engaged with the underlying facts, which included Salim's entering his then-wife's house, stealing her underwear, and poisoning his son's fish, all while she

and their son were present. As explained above, where the Board engages in a case-by-case determination, we lack jurisdiction to review the Board's determination. § 1252(a)(2)(B)(ii), (a)(2)(D); *see also Estrada-Martinez*, 809 F.3d at 893–94. Thus, because of the case-specific determination in denying Salim withholding of removal, we lack jurisdiction to review it.

Salim finally argues that the Board erred in concluding that he failed to meet his burden under the CAT. To meet his burden, Salim needed to show that it is more likely than not that he would face torture if removed. 8 C.F.R. §§ 1208.16(c)(2)–(3), 1208.17(a); *Bernard v. Sessions*, 881 F.3d 1042, 1047 (7th Cir. 2018). We review the denial of a deferral removal under the CAT through the lens of "the highly deferential substantial evidence test and will reverse only if the record evidence *compels* a contrary conclusion." *Bernard*, 881 F.3d at 1047 (quotation marks omitted).

Salim contends that he has shown that because of his conversion to Christianity, he is more likely than not to be tortured in Jordan, but his evidence does not compel that conclusion. He relies primarily on the 2015 reports from the U.S. Department of State. The reports state that some converts from Islam have faced "violence, ostracism, and harassment," often from family members. In Salim's filings before the Board, he asserted fears of similar problems. He also points to excerpts from the reports that discuss torture and violence toward people in prison. We may take judicial notice of more recent country reports. *Meriyu v. Barr*, No. 19-1892, 2020 WL 914321, at *8 (7th Cir. Feb. 26, 2020). The reports from 2018 reveal similar conditions. Nonetheless, this evidence did not require the Board to award relief under the CAT because it does not establish the frequency of attacks. Without that information, we are not compelled to conclude that torture of Salim is more likely than not. Likewise, general assertions of country violence in or out of prison are not enough to require a conclusion that Salim himself will likely be tortured in Jordan. *See Orellana-Arias v. Sessions*, 865 F.3d 476, 490 (7th Cir. 2017); *Lenjinac v. Holder*, 780 F.3d 852, 856 (7th Cir. 2015).

The petition for review is therefore DENIED.