> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 7, 2022
Decided July 6, 2022

**Before**

DAVID F. HAMILTON, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 21-1511

| | |
|---|---|
| MARIA SIMON-ANTONIO and R.M.M.S., | Petition for Review of an Order of the Board of Immigration Appeals. |
| *Petitioners,* | |
| | Nos. A208-539-170 & |
| *v.* | A208-539-171 |
| MERRICK B. GARLAND, Attorney General of the United States, | |
| *Respondent.* | |

## O R D E R

Maria Simon-Antonio and her minor daughter R.M.M.S., both Guatemalan citizens, petition for review of the denial of their applications for asylum, withholding of removal, and protection under the Convention Against Torture. (The daughter's applications are derivative of her mother's.) Simon-Antonio sought relief primarily on the basis that she was harmed and threatened in Guatemala by the men who she believes murdered her father. Because substantial evidence supports the immigration judge's decision that Simon-Antonio failed to establish a nexus between any harm and a protected category, we deny the petition for review.

Simon-Antonio and her daughter entered the United States without documentation in 2015, leading the Department of Homeland Security to initiate removal proceedings against both. Although conceding removability, Simon-Antonio applied for asylum and withholding of removal, arguing that she had been persecuted in Guatemala and had well-founded fears of future persecution should she return. She attributed this persecution to three grounds: (1) her membership in a particular social group (the relatives of her deceased father); (2) her imputed political opinion (support of the Guatemalan military, in which her father served); and (3) her Mayan Kanjobal ethnicity. In addition, Simon-Antonio sought protection under the Convention Against Torture on the basis that she had been subject to threats of rape.

At a hearing before an immigration judge, Simon-Antonio testified that she feared returning to her home, a rural and impoverished indigenous village in Guatemala. Her father was murdered there in 2002, and although the murder was never investigated, Simon-Antonio and her mother believe that it related to her father's service in the Guatemalan military.

Simon-Antonio also testified about more recent threats towards her, which she regarded as sufficiently credible, imminent, and severe to amount to persecution. She recounted, for instance, a 2015 episode in which two male strangers began to follow her around her village. Although the men never spoke to her, she believed that they killed her father or were connected to those who did. And Simon-Antonio further described how she was accosted during a trip to the market that year by men who she believed were gang members (like those, she suspects, who killed her father). She could not fully understand their Spanish, but heard the word "rape," which she perceived to be a threat towards her.

Simon-Antonio, who is Kanjobal (an indigenous Mayan community in Guatemala), also sought asylum based on persecution in the form of severe economic deprivation. Indigenous communities like the Kanjobal have long experienced discrimination in Guatemala. Like many indigenous Guatemalans, Simon-Antonio grew up in a remote rural village, in poverty, and without electricity or schooling. She maintained that the Guatemalan government intentionally discriminates against rural indigenous communities like hers, and that this targeted economic deprivation subjected her to a well-founded risk of future persecution were she to return.

After the hearing, the IJ denied Simon-Antonio's applications. He found her testimony credible but concluded that any past harm—from her father's murder, the

more recent stalking, or her impoverished upbringing—did not amount to persecution. Regarding her father's murder, the IJ pointed out that Simon-Antonio did not know who killed her father or why. As for the stalking charges, the IJ said that even if the men who followed her appeared threatening, they did not harm her and she was "able to walk away." And with respect to economic discrimination against the Kanjobal, the IJ concluded that she did not show that the hardships she experienced were severe enough to constitute persecution.

The IJ also determined that Simon-Antonio had not demonstrated a well-founded fear of future persecution, either from the men targeting her or the Guatemalan government. Because her belief about the men's motives was speculative and she did not suggest that the government would single her out for persecution, she had not shown that her fears were objectively reasonable or that future persecution was reasonably possible. And in any event, the IJ reasoned, Simon-Antonio had also not shown a nexus between the feared harm and a protected ground. The IJ acknowledged that indigenous communities in Guatemala experienced disproportionate poverty but found that poverty was widespread throughout the country and that the deprivations Simon-Antonio may face did not amount to persecution. And because Simon-Antonio could not establish eligibility for asylum, the IJ concluded that she could not meet the more stringent withholding-of-removal standard.

Finally, the IJ found that Simon-Antonio did not qualify for relief under the Convention Against Torture because she produced no evidence that she was likely to be tortured if she returned to Guatemala or that any government official would acquiesce to her torture. The Board of Immigration Appeals adopted and affirmed the IJ's decision.

In her petition, Simon-Antonio first challenges the standard of review that the Board applied when reviewing the IJ's determination that she did not face a well-founded fear of future persecution. She argues that the Board wrongly applied a clear-error rather than de novo standard of review, as reflected in its statement that it "discern[ed] no error in the Immigration Judge's decision" that she lacked a well-founded fear of future harm. A federal regulation specifies that the Board reviews questions of law de novo and findings of fact for clear error. 8 C.F.R. § 1003.1(d)(3).

The Board applied the correct standard of review here. The Board's quoted statement addressed Simon-Antonio's risk of future harm—a "forecasting of future events" that the Board reviews for clear error. *Matter of Z-Z-O-*, 26 I. & N. Dec. 586, 590

(BIA 2015). "[P]erson-specific circumstances (adjudicative facts) can give rise to predictions that also are sensibly treated as facts." *Rosiles-Camarena v. Holder*, 735 F.3d 534, 538–39 (7th Cir. 2013). For the same reason, the Board appropriately treated Simon-Antonio's related assertions—that she was likely to be tortured and that she had established a nexus between future harm and protected grounds—as questions of fact properly reviewed for clear error. *Id.* at 539 (likelihood of torture reviewed for clear error)*; Gonzalez Ruano v. Barr*, 922 F.3d 346, 354 (7th Cir. 2019) (nexus determination a "question of fact").

Simon-Antonio next challenges the IJ's determinations that the harms she experienced in Guatemala—her father's murder, the more recent stalking, and her experience of poverty—did not amount to past persecution or create a well-founded fear of future persecution. But substantial evidence supported the IJ's conclusion that Simon-Antonio had not established the requisite nexus between the harms she fears in Guatemala and a protected category. *See Meraz-Saucedo v. Rosen*, 986 F.3d 676, 685 (7th Cir. 2021). Regarding her father's murder, for instance, Simon-Antonio testified that she did not know who killed her father or why. As for her stalkers, she even concedes in her brief that she has "little evidence of [their] motivations." And with regard to the claim of poverty, the IJ (and the Board) appropriately determined that she did not show that she experienced harm different from the general conditions of hardship in Guatemala. *Ahmed v. Gonzales*, 467 F.3d 669, 673 (7th Cir. 2006) ("General conditions of hardship that affect entire populations … are not persecution.").

Simon-Antonio finally argues that the IJ and Board failed to consider specific evidence she presented (including her testimony that her family lacked electricity and the ability to afford clothes, as well as reports of the United States Department of State addressing discrimination against indigenous peoples in Guatemala). But Simon-Antonio misapprehends the basis of the IJ's and the Board's ruling. Regarding the State Department reports, for example, the IJ cited the agency's 2007 human rights report for Guatemala, and both the IJ and the Board meaningfully considered—and accepted—Simon-Antonio's contention that indigenous Guatemalans experience discrimination and poverty. As for her testimony regarding economic hardship, Simon-Antonio does not explain how this testimony undermines the IJ's determination that she did not show that she was systematically deprived of necessities because of her ethnicity. *See id*. at 673–74.

DENIED