In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3805

ULISES MARTINEZ LOPEZ,

*Petitioner*,

*v.*

LORETTA E. LYNCH, Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A087-774-862

ARGUED NOVEMBER 12, 2015 — DECIDED JANUARY 12, 2016

Before BAUER, FLAUM, and MANION, *Circuit Judges.*

BAUER, *Circuit Judge.* Petitioner, Ulises Martinez Lopez ("Petitioner"), filed a petition for review with this court seeking to vacate the order from the Board of Immigration Appeals ("BIA") that upheld his removal from the United States due to his conviction of a particularly serious crime. For the reasons that follow, we affirm the BIA's decision.

## I.  BACKGROUND

In 1991, when he was twelve years old, Petitioner left his native country of Mexico and illegally entered the United States. He has not returned to Mexico since leaving, although his sister still lives in the same neighborhood in which he grew up.

In December 2009, Petitioner was arrested in Indiana and charged with four counts of dealing and possessing illegal drugs. In July 2010, Petitioner pled guilty to one count, with the state dismissing the remaining three counts. On August 12, 2010, Petitioner entered his plea of guilty and was convicted of a Class A Felony for "Dealing in Cocaine over 3 grams." He was sentenced to twenty years' imprisonment, with ten years suspended, and ten years of probation.

While Petitioner was in prison, an officer with the United States Department of Homeland Security ("DHS") interviewed him. Following the interview, the officer recommended that DHS remove Petitioner from the United States for being an alien convicted of an aggravated felony. On December 27, 2013, DHS issued a Final Administrative Removal Order stating that Petitioner was convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43)(B). Therefore, pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), DHS ordered Petitioner to be removed from the United States to Mexico.

Prior to his removal, Petitioner requested to meet with an asylum officer for a credible fear interview. DHS granted Petitioner's request. On March 26, 2014, an asylum officer found that Petitioner had a reasonable fear of persecution or

torture if he returned to Mexico because Petitioner is homosexual and HIV-positive.

On July 1, 2014, Petitioner received a hearing before an Immigration Judge. During this hearing, Petitioner explained his fear of persecution or torture if he returns to Mexico due to his homosexuality and HIV-positive status. Petitioner described how young people beat him up when he lived in Mexico because he was gay, and that once when he was ten years old, Julio, a bully from his neighborhood, stabbed him with an ice pick. Petitioner also stated that the police did nothing when his mother complained about this incident. He stated that many people in Mexico were homophobic, and that Julio still lived in his old neighborhood. He also explained that doctors in Mexico refuse to treat people who are HIV-positive. He claimed that doctors in Mexico do not help people who lack economic resources, and that he could not afford medical treatment.

At the end of the proceeding, the Immigration Judge orally rendered his decision. He found that Petitioner was not eligible for asylum or withholding of removal because he was convicted of a "particularly serious crime." As a result, Petitioner's only possible relief was deferral of removal under the Convention Against Torture ("CAT"), 8 C.F.R. § 1208.16(c). However, although the Immigration Judge found that there was a possibility that Petitioner would face violence if he returned to Mexico, it was not "more likely than not." Thus, Petitioner was ineligible for protection under CAT.

Petitioner appealed the Immigration Judge's decision to the BIA. On December 11, 2014, the BIA entered an order dismiss-

ing Petitioner's appeal. While the BIA did not rule on whether Petitioner was convicted of an aggravated felony, it found that he nonetheless was convicted of a particularly serious crime and therefore was ineligible for asylum or withholding of removal. Further, the BIA found that the Petitioner could not receive deferral of removal under CAT because he had not shown that it was more likely than not that he would be tortured if he returned to Mexico. Petitioner now appeals the BIA's decision before this court.

## II. DISCUSSION

Petitioner raises two issues on appeal. First, he contends that he was not convicted of a particularly serious crime and is therefore eligible for asylum and withholding of removal. Second, he argues that he is entitled to deferral of removal under CAT. We examine each claim in turn.

### A. Whether Petitioner was Convicted of a Particularly Serious Crime

An alien convicted of a "particularly serious crime" is not eligible for either asylum, 8 U.S.C. § 1158(b)(2)(A)(ii), or withholding of removal, 8 U.S.C. § 1231(b)(3)(B)(ii). For purposes of asylum, a conviction of an "aggravated felony" constitutes a conviction for a particularly serious crime. 8 U.S.C. § 1158(b)(2)(B)(i). For purposes of withholding of removal, a conviction of an "aggravated felony" for which the alien received a sentence of at least five years' imprisonment constitutes a conviction for a particularly serious crime. 8 U.S.C. § 1231(b)(3)(B)(iv). Therefore, if Petitioner's conviction constitutes an aggravated felony, then he is ineligible for

asylum and withholding of removal (since he received a prison sentence greater than five years).

We have jurisdiction to determine whether an alien committed an aggravated felony. *See Eke v. Mukasey*, 512 F.3d 372, 378 (7th Cir. 2008) ("we retain jurisdiction to determine whether we have jurisdiction—that is, to determine whether an alien's criminal conviction is indeed an 'aggravated felony'") (citation omitted). Furthermore, we review *de novo* whether an alien committed an aggravated felony. *Id.* (citation omitted). Since we review *de novo* whether an alien was convicted of an aggravated felony, it is irrelevant to our analysis that the BIA's opinion addressed the issue without definitively ruling on the matter. So, we will examine whether Petitioner's Indiana conviction for dealing over three grams of cocaine constitutes an aggravated felony.

### 1. Aggravated Felony Analysis

To determine whether an alien's conviction constitutes an aggravated felony, we apply the "categorical approach." *Eke*, 512 F.3d at 378. That is, we examine the state statute under which the alien was convicted, and compare it to the "generic" corresponding aggravated felony under the Immigration and Nationality Act. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013). A state offense is a categorical match with a generic federal offense only if the elements of the state offense mirror the elements of the generic federal offense; the actual conduct underlying the offense is irrelevant to the analysis. *See United States v. Zuniga-Galeana*, 799 F.3d 801, 804 (7th Cir. 2015) (citation omitted).

Further, if the state statute forming the basis of the conviction is a divisible statute that "proscribes multiple types of conduct, some of which would constitute an aggravated felony and some of which would not," then the court applies the "modified categorical approach." *Familia Rosario v. Holder*, 655 F.3d 739, 743 (7th Cir. 2011). Under the modified categorical approach, courts can "consult a limited class of documents … to determine which alternative formed the basis of the defendant's prior conviction." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). Such documents include the terms of a plea agreement, the charging document, the transcript of colloquy between the judge and the defendant regarding the defendant confirming the factual basis for the plea deal, or "some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005).

Here, the generic corresponding aggravated felony under the Immigration and Nationality Act is: "illicit trafficking in a controlled substance … including a drug trafficking crime." 8 U.S.C. § 1101(a)(43)(B). A "drug trafficking crime" includes any felony punishable under the Controlled Substances Act, 18 U.S.C. § 924(c)(2), which in turn makes it unlawful to knowingly or intentionally "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). Furthermore, the term "distribute" is defined under the statute as: "to *deliver* … a controlled substance." 21 U.S.C. § 802(11) (emphasis added). In this case, the Indiana statute forming the basis of the Petitioner's conviction states that a person is guilty of dealing in cocaine if that individual "knowingly or intentionally manufactures, finances the manufacture of,

delivers, or finances the delivery of cocaine;" or if the individual "possesses, with intent to manufacture, finance the manufacture of, deliver, or finance the delivery of cocaine." Ind. Code § 35-48-4-1(a)(1)-(2).

Both the generic corresponding aggravated felony under the Immigration and Nationality Act and the Indiana statute criminalize *manufacturing* and *delivering* illegal drugs. However, the Indiana statute is broader in scope because it also criminalizes *financing* the manufacture or delivery of illegal drugs. As a result, the modified categorical approach is appropriate, and we must examine the permissible documents to determine which alternative formed the basis of Petitioner's conviction under the Indiana statute. *See Shepard*, 544 U.S. at 26. Here, the appropriate documents are Petitioner's plea agreement and the charging document.

First, the plea agreement states that Petitioner pleads guilty to "Count 1: dealing in cocaine greater than 3 grams." But, the plea agreement does not specify which portion of the Indiana statute Count 1 encompassed, so we next examine the charging document.

Under Indiana law, the charging document can be either an information or an indictment filed by the prosecutor with the appropriate court. Ind. Code § 35-34-1-1(b). Indiana law requires the charging document to contain "the name of the offense [charged] in the words of the statute or any other words conveying the same meaning," as well as other information such as the date, time, and place of the offense. Ind. Code § 35-34-1-2(a). In addition, Indiana provides a statutory

suggested format for prosecutors to follow when preparing an information. Ind. Code § 35-34-1-2(e)-(f). It is as follows:

> [affiant], being duly sworn on his oath or having affirmed, says that [defendant], on the ___ day of ___ 20__ at the county of ___ in the state of Indiana (HERE SET FORTH THE OFFENSE CHARGED). *Id*.

In this case, the prosecutor filed an information with the appropriate court charging the Petitioner with dealing cocaine in violation of Indiana Code § 35-48-4-1.[1] Furthermore, the information conforms to the Indiana statutory format and states:

> I, Detective Brian Elmore of the United Drug Task Force, who being duly sworn or having affirmed says that on or about 12/09/2009, at Kohl's Department Store in Plainfield in Hendricks County, State of Indiana, Ulises Martines [*sic*] *did knowingly deliver cocaine*, said drug having a weight of more than three (3) grams, to wit 28.4 grams (emphasis added).

---

[1]   The information technically states that Petitioner is charged with violating "I.C. 35-48-4-1(b)." However, this is an error because Indiana Code § 35-48-4-1(b) is not an offense, but rather states that a person can only be convicted of possessing with intent to manufacture, finance the manufacture of, deliver, or finance the delivery of cocaine if there is evidence other than the weight of the drugs that the individual had that intent. But, under Indiana law, any error in statutory citations within an information is excusable "where the defendant was not otherwise misled as to the nature of the charges against the defendant." Ind. Code § 35-34-1-2(a)(3). Since the information further clarifies the charges against the Petitioner, we find this is harmless error.

By examining the charging document, it is evident that Petitioner was convicted under Indiana Code § 35-48-4-1(a)(1)(C), which criminalizes knowingly delivering cocaine. Since the delivering cocaine element of the Indiana statute mirrors the delivering a controlled substance element of the generic corresponding aggravated felony under the Immigration and Nationality Act, it is a categorical match. *See* 21 U.S.C. § 841(a)(1); 21 U.S.C. § 802(11). Therefore, Petitioner was convicted of an aggravated felony.

Petitioner claims that we cannot examine the information filed by the prosecutor because it constitutes a police report, which courts cannot examine under the modified categorical approach. *See Shepard*, 544 U.S. at 16. To support this claim, Petitioner relies exclusively on our earlier opinion in *United States v. Lewis*, 405 F.3d 511 (7th Cir. 2005). In *Lewis*, a district court improperly applied the categorical approach by emphasizing the defendant's conduct underlying the case to determine whether the defendant was convicted of a "crime of violence," rather than focusing on the elements of the Indiana statute at issue. *Id.* at 514. Specifically, the judge examined affidavits that were attached to the information that detailed the underlying conduct of the defendant's armed jewelry store robbery. *Id.* We held that the affidavits attached to the information were a sworn police report, rather than a charging document, and thus could not be examined. *Id.* at 515. We explained: "The list in *Shepard* is designed to identify documents that illuminate *what crime* the defendant committed … . Using additional materials such as affidavits to ascertain *how* this person violated a statute departs from the

categorical approach that *Shepard* and *Taylor* adopt." *Id.* (emphasis in original).

By contrast, here we are examining the information document itself, rather than an attached affidavit. Also, the information here does not state *how* Petitioner committed the crime of dealing cocaine. Rather, it explains *what crime* Petitioner committed; it specifies whether he manufactured, delivered, or financed the manufacture or delivery of cocaine. Specifically, the information states that the Petitioner was charged with "knowingly deliver[ing] cocaine." It does not delve into the details of the Petitioner's conduct underlying the charges, but instead provides the requisite basic information regarding the date, time, and place of the offense as required under Indiana law.

Furthermore, in this case there was a "Probable Cause Affidavit" that was attached to the information. The Probable Cause Affidavit describes in extensive detail the underlying conduct of *how* the Petitioner violated the Indiana statute. As in *Lewis*, this attached affidavit to the information constitutes a sworn police report, which is not part of the charging document.[2] *See Lewis*, 405 F.3d at 515. As a result, while it is proper for this court to consider the information under the modified categorical approach, we cannot and do not examine the Probable Cause Affidavit attached to the information.

---

[2]   While it is Indiana's practice to attach probable cause affidavits to an information, the Indiana Supreme Court has clarified that the two documents are considered separate. *See Schweitzer v. State*, 531 N.E.2d 1386, 1388 (Ind. 1989) ("The probable cause affidavit relates to the pretrial detention of the defendant, not to the charging instrument.").

Therefore, by applying the modified categorical approach, we find that the Petitioner was convicted of an aggravated felony. Since he was convicted of an aggravated felony, he is ineligible for asylum because his crime is *per se* a particularly serious crime. 8 U.S.C. § 1158(b)(2)(B)(i). In addition, because he was convicted of an aggravated felony and sentenced to more than five years' imprisonment (in this case twenty years), he is also ineligible for withholding of removal because that too constitutes a particularly serious crime. 8 U.S.C. § 1231(b)(3)(B)(iv).

## 2. Petitioner's *Chenery* Challenge

Petitioner argues that the *Chenery* doctrine requires this court to only uphold the BIA's determination based solely on the agency's analysis. *See SEC v. Chenery*, 318 U.S. 80 (1943). However, Petitioner claims that the BIA applied the wrong legal standard when it analyzed whether he was convicted of a particularly serious crime. The BIA stated in its opinion that "it is not necessary to determine whether the conviction constitutes an aggravated felony." Instead, the BIA analyzed whether the Petitioner's conviction constituted a particularly serious crime under the alternative case-by-case analysis. This analysis involves examining the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction to determine whether a conviction that is not an aggravated felony nonetheless constitutes a particularly serious crime. *See N-A-M-*, 24 I. & N. Dec. 336, 341–42 (BIA 2007). However, the BIA's opinion went on to cite the presumption that *aggravated felonies* involving drug trafficking are particularly serious crimes. The BIA then listed

the factors that must be established in order to overcome this presumption, as determined in *Y-L-, A-G-, & R-S-R-*, 23 I. & N. Dec. 270, 274, 276–77 (BIA 2002). After citing the presumption and the factors needed to rebut it, the BIA then cited the correct standard from *N-A-M-* for determining whether a non-aggravated felony constitutes a particularly serious crime. But, the BIA's analysis combined both the correct standard from *N-A-M-* and the incorrect standard from *Y-L-*. As a result, Petitioner argues that we must remand the case.

Even if Petitioner is correct, his argument fails because the "futility doctrine" is a recognized exception to the *Chenery* doctrine. *See Osmani v. INS*, 14 F.3d 13, 15 (7th Cir. 1994). Although "[o]rdinarily we are not permitted to affirm the order of an administrative agency on a ground that the agency did not rely upon in making the order … . [t]here is an exception for the case where it is clear what the agency's decision has to be." *Id.* (citations omitted); *see also Sahara Coal Co. v. Office of Workers' Comp. Programs, United States Dep't of Labor*, 946 F.2d 554, 558 (7th Cir. 1991) ("The harmless-error doctrine is available in judicial review of administrative action; it is an exception to the *Chenery* principle. If the outcome of a remand is foreordained, we need not order one.") (citations omitted). Thus, if remand would be futile because it is clear what the decision has to be, we may affirm the case without remanding it back to the BIA.

In this case, we have determined that Petitioner was convicted of an aggravated felony. Therefore, remanding this case to the BIA would be futile because a person convicted of an aggravated felony (and who has been sentenced to

more than five years' imprisonment) has committed a particularly serious crime for purposes of asylum and withholding of removal. *See* 8 U.S.C. § 1158(b)(2)(B)(i); 8 U.S.C. § 1231(b)(3)(B)(iv). Since the BIA would have to find that Petitioner is ineligible for asylum and withholding of removal, and that would not change the outcome from the BIA's opinion, we will not remand the case.

**B.  Whether Petitioner was Entitled to Deferral of Removal Under CAT**

Although we have determined that Petitioner is ineligible for asylum or withholding of removal, we still have jurisdiction to determine whether Petitioner is entitled to deferral of removal under CAT. *See Issaq v. Holder*, 617 F.3d 962, 970 (7th Cir. 2010); *see also* 8 C.F.R. § 1208.16(c)(4).[3]

"We review the denial of CAT protection under the highly deferential substantial evidence test." *Rashiah v. Ashcroft*, 388 F.3d 1126, 1131 (7th Cir. 2004) (citations omitted). We review the entire record as a whole and reverse "only if the record evidence *compels* a contrary conclusion." *Lenjinac v. Holder*, 780 F.3d 852, 855 (7th Cir. 2015) (emphasis added) (citations omitted). In order to receive CAT protection, the Petitioner has the burden to demonstrate that "it is more likely than not that [the Petitioner] would be tortured if removed to [Mexico]."

---

[3]   The Respondent requests the court to reconsider *Issaq*'s holding regarding whether 8 U.S.C. § 1252(a)(2)(C) precludes judicial review of deferral of removal claims when an alien has been convicted of an aggravated felony, in light of the Second Circuit's holding in *Ortiz-Franco v. Holder*, 782 F.3d 81, 89 (2d Cir. 2015). The Second Circuit's opinion, however, does not persuade us to overrule *Issaq*.

8 C.F.R. § 1208.16(c)(2). In addition, CAT protection requires evidence that the Petitioner will be tortured by the government, or with the government's acquiescence. *Khan v. Holder*, 766 F.3d 689, 698 (7th Cir. 2014) (citations omitted).

Here, the BIA agreed with the Immigration Judge that the Petitioner did not show that it is more likely than not that he would be tortured if he was removed to Mexico. The BIA found that the Immigration Judge properly examined all relevant evidence in the record and that the record supported the Immigration Judge's decision. The BIA also noted that there is a large "lesbian, gay, bisexual, and transgender (LGBT) community in Mexico and many openly gay people have not been harmed." In addition, the BIA found that Mexican law prohibits such harm. Finally, the BIA found that while there have been incidents of violence towards LGBT individuals in "some parts of Mexico," there are other parts of the country "more accepting of the LGBT community."

Petitioner argues that the substantial evidence in the record indicates that it is more likely than not that he would be tortured if removed to Mexico. He claims that Julio, the bully who stabbed him with the ice pick when Petitioner was ten years old, still lives in his former neighborhood. He also cites news articles detailing atrocities committed against gay men throughout Mexico. In addition, he repeatedly relies on a 2008 report from the Commission of Human Rights of the Federal District that found that over the past 10 years, 80% of homophobic murders in Mexico City have gone unpunished, and that a poll conducted in 2011 found that the police were identified as the group most intolerant of the gay community. Further, Petitioner argues that even if places in Mexico, such as

Mexico City, are more tolerant of openly gay men, he cannot relocate there because his sister lives in Acapulco. He also argues that his HIV-positive diagnosis makes relocation unreasonable.

While Petitioner may face violence if he returns to Mexico, we do not find that the record *compels* us to the conclusion that torture is more likely than not to occur. The fact that Julio still lives in his old neighborhood does not mean that twenty-five years later he still seeks to harm the Petitioner, nor that such harm would be with the government's acquiescence. *See* 8 C.F.R. § 1208.18(a)(7) ("Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity.").

In addition, while the numerous articles and studies cited by the Petitioner indicate that gay men have been victims of violence in Mexico, these do not suggest that the *Petitioner* is more likely than not to face such violence. *See Rashiah*, 388 F.3d at 1133 ("Though the country report supports the contention that torture occurs in Sri Lanka, it does not demonstrate that it is more likely than not that *petitioner* will be tortured if he returns.") (emphasis in original). Moreover, the fact that Petitioner's sister lives in Acapulco does not mean that he cannot move to an area of Mexico more accepting of homosexuals, especially since he has lived the last twenty-five years without his sister. *See* 8 C.F.R. § 1208.16(c)(3) (in determining whether to grant CAT protection, courts should examine whether the petitioner could relocate to another part of the

country where he is not likely to be tortured). The record also reflects that medical treatment for HIV is free in Mexico, and that there are 57 clinics for HIV treatment located throughout the country.

Therefore, we find that the Petitioner did not satisfy his burden to show that it is more likely than not that he would be tortured by the government or with the government's acquiescence if he returned to Mexico. The substantial evidence in the record supports the BIA's decision and does not call for a contrary conclusion.[4] As a result, the Petitioner is not entitled to deferral of removal under CAT.

### III.  CONCLUSION

For the foregoing reasons, Petitioner's petition is DENIED and the BIA's decision is AFFIRMED.

---

[4]  Petitioner also asks this court to remand for the opportunity to further develop the record to determine his CAT claim. However, we find that the roughly 850 page record is sufficient to rule on this issue.