In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-2290

ANDRE RAY BERNARD,

*Petitioner,*

*v.*

JEFFERSON B. SESSIONS III,
Attorney General of the United States,

*Respondent.*

Petition for Review of an Order of the Board of Immigration Appeals.
No. A077-767-738.

ARGUED JANUARY 24, 2018 — DECIDED FEBRUARY 8, 2018

Before BAUER, KANNE, and BARRETT, *Circuit Judges.*

PER CURIAM. Andre Bernard, a Jamaican citizen, petitions for review of the denial of his applications for statutory withholding of removal and deferral of removal under Article 3 of the Convention Against Torture. The Board of Immigration Appeals upheld those decisions. First, the Board concluded, the immigration judge correctly found Bernard ineligible for withholding of removal on the ground that he had committed a "particularly serious crime," *see* 8 U.S.C. § 1231(b)(3)(B)(ii);

second, the Board agreed that Bernard had not shown that, if removed to Jamaica, he likely would be tortured with the acquiescence of a public official on account of his bisexuality or political opinions. We dismiss for lack of jurisdiction the portion of Bernard's petition seeking review of the "particularly serious crime" designation, and deny the remainder of the petition, as substantial evidence supports the IJ's reasoning as adopted and supplemented by the Board.

## I.  BACKGROUND

Bernard grew up in Spanish Town, Jamaica, where he and his family supported the Jamaica Labour Party, one of the two major political parties in the country. Bernard says he realized as a preteen that he was bisexual, but hid it for fear of how his family would react. His fear was based in part on an event he witnessed at age eleven: Two men who were caught having sexual relations in his neighborhood were "chased down and … stoned, beaten, and also burnt with car tires." (A.R. 217.) His family members were present and encouraged the mob, "shouting, kill, kill, kill the batty boys, and praising the people who were throwing the rocks."[1] (A.R. 219.) Bernard also says he was influenced by popular music in Jamaica, some of which encouraged "anyone to shoot and kill gay men, or people of the LGBT community." (A.R. 259.) Still, he had a secret relationship with another preteen boy for about a year and a half while living in Jamaica.

Bernard arrived in the United States in 1998, when he was 19 years old, on a temporary visitor's visa. He married an American citizen, Bose Andrews, but they divorced in 2009.

---

[1] "Batty boy" is a derogatory term for a gay man in Jamaica.

Bernard then had a long relationship with another woman, Jennifer Hunter, but dated men at the same time.

Between 2002 and 2013 Bernard was convicted of multiple crimes including weapons and drug offenses. Most relevant to this appeal is his conviction in February 2011 for domestic battery, 720 ILCS 5/12-3.2(a)(1). Bernard pleaded guilty to stabbing his girlfriend's sister with a kitchen knife. Bernard, however, said then and still maintains he acted in self-defense. He was sentenced to twelve months "conditional discharge," which he completed satisfactorily, meaning he never served time in custody.

In January 2016, an agent of the Department of Homeland Security took Bernard into custody. Bernard conceded removability. He applied for withholding of removal, *see* 8 U.S.C. § 1231(b)(3)(A), and for deferral of removal under Article 3 of the Convention Against Torture, *see* 8 C.F.R. § 1208.17. He explained that, if removed to Jamaica, he feared persecution or torture on the basis of his bisexuality and membership in the Jamaica Labour Party.

Immigration Judge Robin Rosche heard evidence on two separate days. Bernard described his experiences living in Jamaica, including the same-sex relationship he had in his youth, the mob violence he witnessed, and his participation in the Jamaica Labour Party. He testified that family members who live in Jamaica would not approve of his bisexuality and that one uncle in particular would try to "beat it out of" him. (A.R. 223.) He said that his relatives were aware of his sexual orientation because rumors were "going around" (A.R. 253); he came out to his father while in custody and believes that since then his father has talked to people in Jamaica about his bisexuality.

Bernard also explained that several of his family members have been murdered because of their affiliation with the Jamaica Labour Party and its related gang, the One Order Posse. He said that if he returned, opposition party members or others might recognize him and kill him too. But he acknowledged that only "word of mouth" informed his belief that the murders were politically motivated, and he suggested that at least one of the victims was murdered by the One Order Posse itself, not the opposition.

Several other witnesses testified. Nina Porter, Bernard's friend, testified that she had seen him in romantic relationships with men and that she did not believe his family in Jamaica would accept his sexual orientation. Ainsley Bernard (petitioner's father) testified that he was afraid for Bernard to return to Jamaica, but that he did not accept Bernard's bisexuality. He also explained that he had spoken about his son's sexual orientation to family members in Jamaica and that a relative threatened to "beat it out" of Bernard. (A.R. 319–20.) Further, Ainsley testified that another relative (Bernard's "aunt's boyfriend") was killed for being gay (but, he elaborated, the murder was more likely motivated by rumors that the man was "buying sexual favors from … young kids"). (A.R. 322.) Ainsley confirmed that several relatives had been killed for participating in the Jamaica Labour Party, but also explained that the party is currently in power. Bernard's siblings Vanessa, Kimon, and Gregg testified as well, and confirmed the reports of violence against LGBT people and the murders of various family members. But none of the witnesses was able to provide specific details about any of the murders.

Both sides also submitted articles and reports about the conditions in Jamaica. These reports confirm that violence against the LGBT community is prevalent, particularly for homeless youth, women, and people whose appearance is gender non-conforming; law enforcement often acquiesces to the violence by standing by and doing nothing to prevent it. Further, the reports describe that homosexual acts are illegal under "anti-buggery" laws. But many reports also indicate progress—the first "pride parade" recently was held without incident, several government offices and officials have begun calling for reform, and some police officers have started helping LGBT individuals subjected to violence.

The IJ denied relief to Bernard. She first found that Bernard was not credible enough to sustain his burden on his testimony alone. Although the IJ acknowledged his story was "consistent throughout," she concluded it was "consistently vague" and seemed to rely more on "general perceptions" of violence instead of specific examples. (A.R. 63–64.) Bernard's witnesses were similarly vague, she said, so his testimony essentially was uncorroborated. Still, the IJ assessed the merits of his claims.

First, the IJ found Bernard ineligible for withholding of removal because the elements and underlying facts of his domestic-battery offense rendered it "particularly serious," barring him from that relief. *See* 8 U.S.C. § 1231(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d)(2). Then, the IJ considered deferral of removal under the CAT. She concluded that the evidence—which consisted mostly of decades-old memories and general perceptions of violence in Jamaica—did not establish that Bernard would more likely than not be tortured with the

acquiescence of a public official, on account of either his sexual orientation or his political affiliation. *See* 8 C.F.R. §§ 1208.16(c)(3), 1208.17(a). In reaching that conclusion, the IJ noted that Bernard had not shown he would be unable to relocate safely to a different part of Jamaica.

Bernard appealed to the Board and challenged each of the IJ's findings. The Board dismissed Bernard's appeal, upholding the IJ's findings and adding a few observations. The Board noted that crimes against persons, such as domestic battery, are more likely to be considered "particularly serious." The Board also concluded that, even if Bernard established that he might be harassed for his sexual orientation, harassment does not amount to torture. Further, the Board noted that finding in Bernard's favor would require "stringing together a series of suppositions"—namely, that "individuals will discover that he is bisexual; that he will be ostracized by members of the community due to his sexual orientation; that these individuals will torture him; and that the police will not intervene to protect him." (A.R. 3.) And, the Board added, Bernard did not submit any evidence of country conditions with respect to politically motivated violence.

## II. ANALYSIS

On appeal Bernard reasserts essentially the same theories that were unsuccessful before the Board and the IJ. When, as in this case, the Board agrees with the IJ and supplements her opinion with additional observations of its own, this court "review[s] the IJ's decision as supplemented by the Board's additional reasoning." *Jabateh v. Lynch*, 845 F.3d 332, 337 (7th Cir. 2017) (internal quotation marks and citation omitted). Accordingly Bernard focuses on the IJ's rationale, and we do the same.

First, Bernard contends that his conviction for domestic battery was not a "particularly serious crime" rendering him ineligible for withholding of removal. A crime may be defined as "particularly serious" in one of two ways: first, if it is an "aggravated felony" punished by at least five years' imprisonment; second, if the Attorney General determines it to be particularly serious after examining the "nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction." *Estrada-Martinez v. Lynch*, 809 F.3d 886, 889 (7th Cir. 2015) (quoting *In re N.A.M.*, 24 I. & N. Dec. 336, 342 (B.I.A. 2007)). In this case, the IJ used the second method—after examining the nature and circumstances of Bernard's domestic-battery offense, she concluded that the crime was "particularly serious."

The government correctly points out that we lack jurisdiction to review the discretionary determination that Bernard's crime was "particularly serious" based on all the underlying circumstances unless he raises a constitutional or legal issue about the decision. *See* 8 U.S.C. § 1252(a)(2)(B)(ii); *Herrera-Ramirez v. Sessions*, 859 F.3d 486, 487 (7th Cir. 2017); *Estrada-Martinez*, 809 F.3d at 892–94. Bernard does not meaningfully engage with this jurisdictional problem; he asserts simply that "there is a legal dispute on whether a domestic battery can be regarded a 'particularly serious crime.'" (Reply Br. at 8.) But he raises no legal argument, instead maintaining that, "based on the nature and underlying facts of the battery," (id.) his crime was not particularly serious. Attempts such as this to recharacterize the particulars of a crime raise factual, not legal, issues. *Herrera-Ramirez*, 859 F.3d at 488; *Estrada-Martinez*, 809 F.3d at 892–94. We therefore lacks jurisdic-

tion to review the "particularly serious crime" finding. *Herrera-Ramirez*, 859 F.3d at 488; *Fuller v. Lynch*, 833 F.3d 866, 870–71 (7th Cir. 2016); *Estrada-Martinez*, 809 F.3d at 892–93.

Thus the only relief Bernard could be eligible for is deferral of removal under the CAT. *See Estrada-Martinez*, 809 F.3d at 889. An applicant seeking this relief has the burden of demonstrating that he is "more likely than not to be tortured" in the proposed country of removal. 8 C.F.R. §§ 1208.16(c)(2)–(3), 1208.17(a). We interpret that standard liberally, requiring "a substantial risk that a given alien will be tortured if removed from the United States." *Rodriguez-Molinero v. Lynch*, 808 F.3d 1134, 1135–36 (7th Cir. 2015). Furthermore, "CAT protection requires evidence that the Petitioner will be tortured by the government, or with the government's acquiescence." *Lopez v. Lynch*, 810 F.3d 484, 492 (7th Cir. 2016). When evaluating whether the petitioner has met his burden, the IJ "must address various factors such as evidence of past torture, ability to relocate within the country, evidence of grave human rights violations or other relevant country conditions." *Orellana-Arias v. Sessions*, 865 F.3d 476, 489 (7th Cir. 2017); *see* 8 C.F.R. § 1208.16(c)(3)(i)–(iv). Evidence of generalized violence is not enough; the IJ must conclude that there is a substantial risk that the petitioner will be targeted specifically. *Lozano-Zuniga v. Lynch*, 832 F.3d 822, 830–31 (7th Cir. 2016); *Lopez*, 810 F.3d at 493. We review the denial of CAT deferral "under the highly deferential substantial evidence test" and will reverse "only if the record evidence *compels* a contrary conclusion." *Lopez*, 810 F.3d at 492 (internal citations omitted).

The Attorney General contends that we need not address the specifics of Bernard's CAT claim because he does not challenge the finding that he could safely relocate within Jamaica. A party waives arguments that are not presented in the opening brief. *Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008). But there is not waiver in this instance. True, Bernard does not devote a section of his opening brief to relocation, as he did in his brief to the Board. But both of Bernard's briefs to this court assert that violence against and persecution of the LGBT community exists everywhere in Jamaica; he does not focus solely on Spanish Town. Further, Bernard generally challenges the IJ's decision to deny CAT relief based on his bisexuality, which encompasses the finding that he could safely relocate. *See* 8 C.F.R. § 1208.16(c)(3)(ii).

As for the merits of Bernard's appeal, we conclude the IJ's denial of CAT deferral is supported by substantial evidence. Bernard's first claim, that he will be tortured for his sexual orientation, is his stronger one. Certainly Bernard cites evidence that LGBT individuals face risks in Jamaica, including mob violence and death and the fact that Jamaica still criminalizes homosexual acts. Bernard contends that the IJ and the Board overlooked this proof as well as evidence of his personal experience with mob violence as a child, the threat by a relative to "beat [his sexual orientation] out of" him, and the murder of his aunt's boyfriend, allegedly for being gay.

In fact, the IJ exhaustively reviewed all of the evidence and explained why it did not establish a substantial likelihood that Bernard would be tortured on account of his sexual orientation. In doing so, the IJ considered whether Bernard was likely to suffer "extreme" treatment as required by 8 C.F.R. §

1208.18, and whether future torture was likely based on Bernard's past experiences in Jamaica, his ability to relocate within the country, and the "evidence of grave human rights violations or other relevant country conditions." *Orellana-Arias*, 865 F.3d at 489; *see* 8 C.F.R. § 1208.16(c)(3)(i)–(iv).

Neither Bernard's decades-old experiences (which did not themselves amount to torture and, indeed, did not even involve Bernard directly) nor the general reports of violence in Jamaica were sufficient to show that he *specifically* would be targeted for extreme violence in the future. *See Lopez*, 810 F.3d at 492–93. And although Jamaica's "anti-buggery" laws remain on the books, country reports suggest they are used infrequently and only in cases of sexual assault and molestation. As for the relative's threat to harm Bernard, it is too vague to determine if the relative—a private individual—would "torture" Bernard (a "beating" would not necessarily suffice), or if any public official would acquiesce to such torture. Further, testimony was inconclusive about whether another of Bernard's relatives was murdered for being gay—Bernard's father testified that the man was murdered for seeking sex from "young kids." Bernard's evidence that his family will not accept him, though tragic, says nothing about whether he will be tortured. We cannot say that the IJ disregarded any significant evidence or that the record *compels* the conclusion that Bernard is at a substantial risk for torture. *See Lopez*, 810 F.3d at 492–93; *see also Rashiah v. Ashcroft*, 388 F.3d 1126, 1133 (7th Cir. 2004) (collecting examples of conduct not extreme enough to be "torture").

Still, one aspect of the IJ's decision is problematic. As Bernard points out, the IJ expressed a belief that, because Bernard might not be "recognized" as bisexual, he had not established

that he would be tortured for that reason. (A.R. 69.) But Bernard and his friend Nina Porter both testified that, in the United States, Bernard dated both men and women, and went out in public with men. Neither the IJ nor the Board specifically discredited these reports. The IJ seemed to imply that Bernard's claim fails because he will be safe if he hides his sexual orientation, a premise that this court rejects. *See Velasquez-Banegas v. Lynch*, 846 F.3d 258, 262 (7th Cir. 2017) ("The law does not require people to hide characteristics like religion or sexual orientation… .").

Even if the IJ erred on this point, however, the error does not require us to grant the petition for review. Bernard's purported ability to hide or keep secret his sexual orientation was not the only factor the IJ considered. Ultimately, as the IJ and the Board both pointed out, Bernard's claim requires "stringing together a series of suppositions"—not only that he will be outed, but also that community members will harm him to a level amounting to "torture," and that a public official will acquiesce to the torture. *See Lopez*, 810 F.3d at 492–93 (upholding denial of CAT relief despite evidence of general violence against LGBT community); *Bathula v. Holder*, 723 F.3d 889, 904 (7th Cir. 2013) (upholding denial where IJ did not require petitioner to "live in hiding" but instead discredited likelihood of future torture); *see also Fuller*, 833 F.3d at 868, 871–72 (noting dangers in Jamaica for LGBT persons but upholding denial of CAT relief).

Bernard's claim based on his political affiliation is even weaker. The evidence before the IJ consisted mostly of hearsay reports about general violence between the two main political parties (or perhaps more accurately, their affiliated

gangs in Spanish Town) and the murders of Bernard's relatives. Yet none of the witnesses could describe these murders with much clarity or sufficiently link them to the victims' political advocacy. The IJ and the Board thus reasonably discounted these reports. *See Fuller*, 833 F.3d at 869 (finding it "entirely reasonable" for IJ to hold against petitioner his inability to remember details of shooting). Moreover, although Bernard testified that he helped with political rallies when he was a child, nowhere does he suggest that he plans to engage in political activism back in Jamaica. Instead, his fear comes from a vague threat by one of his relatives' killers, who purportedly said he would find and kill anyone in Bernard's family. This threat does not appear related to Bernard's own political affiliation, and his fear of torture based on political affiliation is otherwise too speculative to justify relief under the CAT. *See Lozano-Zuniga*, 832 F.3d at 830–31.

## III. CONCLUSION

We therefore DISMISS for lack of jurisdiction the portion of Bernard's petition seeking reversal of the "particularly serious crime" designation and attendant finding of ineligibility for withholding of removal. We DENY the remainder of the petition for review.