NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 2, 2021
Decided March 30, 2021

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 20-2792

| | |
|---|---|
| EDGAR MAGANA AYALA,<br>*Petitioner*, | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| *v.* | No. A058-223-748 |
| MERRICK B. GARLAND, Attorney General<br>of the United States,<br>*Respondent*. | |

**O R D E R**

Petitioner Edgar Magana Ayala is a Mexican citizen who was a legal permanent resident in the United States before he committed a drug crime and was removed to Mexico, where he sold drugs for a cartel. He returned illegally and was later placed in removal proceedings. Magana applied for deferral of removal under the Convention Against Torture asserting that he fears he will be killed by cartels if he is removed again to Mexico. An immigration judge denied relief, finding that Magana had not proven he faced a substantial risk of torture. The Board of Immigration Appeals upheld that determination. Magana petitions for review of the denial of his application. Because the agency's decision is supported by substantial evidence, we deny his petition.

I.      *Background*

Magana, now 32 years old, was born in Mexico and as an infant was brought to the United States without legal documentation. At age 18, he became a legal permanent resident after he was adopted by his stepfather, who is a United States citizen. See 8 U.S.C. §§ 1255, 1151(b)(2)(A)(i), 1101(b)(1)(E). Soon after, however, in 2007, Magana pleaded guilty to an Illinois state charge for manufacture or delivery of cocaine in violation of 720 Ill. Comp. Stat. § 570/401(c)(2). He was sentenced to two years of probation, but his conviction counted as an aggravated felony under immigration law, see 8 U.S.C. § 1101(a)(43)(B), and he was found removable under § 1227(a)(2)(A)(iii). In 2013, he was removed to Mexico.

At his recent hearing before an immigration judge, Magana testified about his difficult life in Mexico upon his return, and particularly his run-ins with a powerful regional drug cartel. He was living with his grandmother in a small town in the state of Colima on Mexico's west coast. The town was home to two local "plazas," or turfs, controlled by small sub-groups of the Jalisco New Generation Cartel (CJNG). Each plaza had about six or seven members who sold drugs for the cartel. Magana was confronted and accused by a cartel member, Leo Gonzalez, of selling drugs for a rival cartel out of the tattoo shop that he ran from his grandmother's home. Gonzalez warned Magana that his plaza's members planned to interrogate him about his drug dealing. Magana relocated his tattoo shop, but he soon was approached by the other plaza's members. They put a choice to him: pay them off with a large monthly sum, close his shop, or sell methamphetamine for them. Unable to afford the payoff, Magana felt he had no choice but to begin selling drugs for CJNG, believing that they would kill him if he refused.

Magana testified that eight months later, in February 2015, Gonzalez tried to kill him. Gonzalez had picked Magana up in a truck under the pretense of wanting a tattoo. Gonzalez pulled out a gun and fired it in Magana's direction, missing him and hitting the window. Apparently high on methamphetamine, Gonzalez accused Magana of being romantically involved with his sister and stealing his customers by selling drugs for the other plaza. Gonzalez then put the gun to Magana's head and asked for any last words. He released Magana when a companion told him that police were coming.

Magana also described three more attempts that Gonzalez later made on his life. Each attempt took place near the tattoo shop, and two involved Gonzalez firing a gun at him. (In the third attempt, Gonzalez tried to run over a relative of Magana's.) Fearing for his safety, Magana moved to a nearby town for several months. In June 2015, he

moved again to another nearby town. In both places, he continued selling drugs out of CJNG-run bars.

Magana believes he then became a target of CJNG's rival, the notorious Sinaloa Cartel, late in 2015. Around that time, turf wars among the cartels were escalating, and Sinaloa pushed into CJNG territories aggressively, often violently. In November 2015, Sinaloa posted a sign in the town where Magana was living. The sign threatened to "go after" anyone who worked with CJNG. It listed the names of local CJNG members; among the names on the list was "Edgar," Magana's first name. Below the sign was a cooler that contained a mutilated body. The sign was featured on a local news broadcast. Magana's ex-girlfriend, who also worked for CJNG, was murdered about a week after her name appeared on a similar sign.

In November 2015, Magana fled Mexico and reentered the United States without legal authorization. He was picked up by immigration authorities in 2019 while working at an auto shop in Chicago. The government reinstated removal proceedings, and Magana applied for withholding and deferral of removal under the Convention Against Torture, saying he feared he would be killed by either Sinaloa or CJNG if he were returned to Mexico.

At his hearing, Magana testified about his fears. Besides the death threat from Sinaloa, he feared reprisal from CJNG because he knows so much about their operations and he left without their permission. He believed that CJNG killed another friend of his, a former CJNG member, for publicizing videos of CJNG killings and for knowing too much about the cartel's activities. Magana testified that he believed he would be unable to protect himself by relocating to a different part of Mexico, though he admitted that neither cartel operated nationwide. (Sinaloa controls Mexico's northern border and CJNG controls most of the south, he said.) Magana believed that the cartels would discover his whereabouts from the government, given the level of collaboration between the Mexican police and the cartels.

The immigration judge denied all relief. The judge found that Magana's drug-trafficking conviction, an aggravated felony, rendered him ineligible for withholding of removal. 8 U.S.C. § 1231(b)(3)(B)(ii). That left only his application for relief under the Convention Against Torture. The judge concluded that Magana testified credibly but did not qualify for relief because he had not shown that it was more likely than not that he would be tortured if he were returned to Mexico. The judge found his fear of torture is speculative. First, the incidents with Gonzalez stemmed from a personal dispute (over Magana's alleged theft of customers and relationship with Gonzalez's sister)

rather than any reprisal initiated by CJNG or Sinaloa. Second, Magana had not shown how either cartel would learn of his return and track him down. Third, his country-conditions evidence addressed only generalized violence surrounding the drug trade, not any specific risks that Magana himself would face upon return. Fourth, he had not shown that the cartels acted with the acquiescence of the Mexican government; his country-conditions evidence reflected only general impunity and corruption across the country and no link between the government and the cartels. Finally, Magana had not shown that he was unable to relocate within Mexico to avoid harm. The Board of Immigration Appeals upheld the immigration judge's denial of relief.

II.    *Analysis*

An applicant seeking deferral of removal under the Convention Against Torture must establish that it is "more likely than not that he or she would be tortured in the proposed country of removal." *Barry v. Barr*, 916 F.3d 666, 669 (7th Cir. 2019) (internal citations omitted). We interpret that standard liberally, requiring the applicant to show he faces a "substantial risk" of torture if removed from the United States. *Id.* The applicant must also show that the potential torture will be committed either by the government of the removal country or with its acquiescence. When evaluating whether an applicant has met this burden, an immigration judge considers factors such as "evidence of past torture, ability to relocate within the country, evidence of grave human rights violations or other relevant country conditions." *Id.* The evidence must show that the petitioner specifically will be targeted; evidence of generalized violence will not suffice. *Id.*

Where, as here, the Board adopts the immigration judge's reasoning and adds its own analysis, we review the judge's decision as supplemented by the Board. *Barry*, 916 F.3d at 669. We review a denial of relief under the Convention Against Torture "under the highly deferential substantial evidence test and will reverse only if the record evidence compels a contrary conclusion." *Id.* That standard of review is decisive here because the evidence does not compel a finding that Magana is likely to be tortured if he is returned to Mexico.

In his petition for review, Magana argues that substantial evidence does not support the judge's finding that he did not demonstrate that he faces a substantial risk of torture if returned to Mexico. He focuses first on the judge's conclusion that his encounters with Gonzalez arose out of personal animosities rather than having been directed by the CJNG cartel. In his view, the immigration judge downplayed the cartel's role by characterizing Gonzalez's actions as merely the expression of one cartel

member's personal resentments. And Gonzalez's threats of imminent death, even without causing physical injury, he says, can constitute torture by means of mental suffering. See *Perez v. Sessions*, 889 F.3d 331, 336 (7th Cir. 2018), citing 8 C.F.R. § 1208.18(a)(4)(iii).

The record does not compel the conclusion that Gonzalez's attacks were connected to CJNG or that Magana faces a substantial risk of torture by the cartel. Even if Gonzalez's attacks were assumed to rise to the level of torture by mental suffering, substantial evidence supports the immigration judge's interpretation that they were motivated by a personal dispute and do not show a likelihood of future torture at the hands of the cartel. See *Lopez v. Lynch*, 810 F.3d 484, 493 (7th Cir. 2016) (years-old attacks by an individual did not compel conclusion that torture was likely to occur or that government would acquiesce to any such harm). Magana testified that the two plazas were not feuding at the time Gonzalez began trying to kill him, and Gonzalez was never joined in his actions by other CJNG members. In fact, Magana continued selling drugs for CJNG for nine more months without incident. On this record, the immigration judge could reasonably conclude that Gonzalez's attacks were not linked to CJNG and that Magana's fear that CJNG will torture him if he returns to Mexico is speculative. See *Barry*, 916 F.3d at 670 (upholding denial of relief under Convention Against Torture despite petitioner's past experiences that may have risen to level of torture where fear of future torture was "too speculative").

Magana also argues that he met his burden to show that he cannot avoid torture by relocating within Mexico. He argues that once he presented evidence of Gonzalez's attacks and Sinaloa's death threat, the immigration judge should have shifted the burden to the government to show that he could relocate safely.

This argument misapprehends the evidentiary burden under the Convention Against Torture regarding the possibility of internal relocation. As an applicant seeking relief under the Convention, Magana bore the burden of establishing the likelihood of torture if he is returned to Mexico. That inquiry encompasses several factors, including evidence of past torture and the inability to relocate within the country. *Barry*, 916 F.3d at 669; 8 C.F.R. § 1208.16(c)(2), (c)(3)(ii); see *Bathula v. Holder*, 723 F.3d 889, 903–04 (7th Cir. 2013) (rejecting petitioners' argument that agency improperly placed burden to establish unreasonableness of relocation on them, given absence of any past persecution).

Substantial evidence supports the immigration judge's determination that Magana did not meet that burden. Gonzalez did not pursue Magana when he moved to

a nearby town, which is substantial evidence that Magana would be able to avoid danger from Gonzalez by relocating. See *Lopez*, 810 F.3d at 493 (upholding denial of relief under Convention Against Torture where petitioner, a gay Mexican man who feared anti-gay violence, had not shown that he could not avoid harm by relocating to a more tolerant area of Mexico). Plus, as the judge reasonably pointed out, Magana worked only with members of two small local plazas and gave no reason to conclude that "the larger cartel knows about him and is interested in tracking him throughout the country." As for Sinaloa, Magana testified that it primarily operates along the northern border and that the local death threat bore only his first name—two facts that at least permitted the judge's finding that he would not be in danger throughout the country.

Accordingly, substantial evidence supports the immigration judge's conclusions that Magana's fear of torture is speculative and that he can avoid any danger of torture by relocating within Mexico. Because the record does not compel the conclusion that Magana faces a substantial risk of torture if he is returned to Mexico, his petition for review is DENIED.