[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 21-13822

Non-Argument Calendar

_____

LESTER HENRY ROBINSON,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A041-653-139

_____

Before JORDAN, NEWSOM, and BRASHER, Circuit Judges.

PER CURIAM:

Lester Robinson, proceeding pro se, petitions this Court for review of the order of the Board of Immigration Appeals ("BIA") affirming the immigration judge's denial of withholding of removal under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 1208.16(c). Robinson argues that the immigration judge and BIA erred in denying his application for CAT relief by using incorrect legal standards and failing to provide reasoned consideration to his evidence. We disagree and deny the petition.

## I.

Robinson, a native and citizen of Jamaica, was admitted to the United States in 1988 as a lawful permanent resident. In February 2021, the Department of Homeland Security served Robinson with a notice to appear, which charged him with removability under the Immigration and Nationality Act Section 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), and Section 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), because he had been convicted for conspiracy to possess with intent to distribute cocaine in 1994.

Robinson filed his first application for asylum, withholding of removal, and CAT protections on March 18, 2021. In that application, he stated that he feared that if he were removed to Jamaica, he would be prosecuted or tortured because he is a gay man, and

Jamaica is homophobic. Additionally, Robinson alleged that his uncle beat him when he was a child because he believed that Robinson was gay, and that he experienced other forms of homophobia in Jamaica.

On April 29, 2021, Robinson filed an amended asylum application reasserting his sexual-orientation claim and adding a claim that he would be persecuted or tortured on account of his family's connection to the Jamaica Labor Party if he were to return to Jamaica. He included a statement declaring that supporters of the People's National Party murdered his cousin, Jerome Haywood, 20 years ago because of his affiliation with the Labor Party, and that affiliates of the People's National Party murdered Jerome Haywood's nephew, Shandel Haywood, in 2019. He wrote that gay men faced derision in Jamaica and were "beaten and at times killed" because of their sexual orientation. He also stated he witnessed Jamaican police officers beat two gay men who they caught kissing in a Kingston market when he was approximately 14 years old.

Robinson added that inmates he met while incarcerated in the United Sates spread word to people in Jamaica that Robinson was gay. He alleged that his family in Jamaica had been warned that he could not return because he was gay.

Robinson filed evidence relating to the treatment of LGBTQ people in Jamaica and the disputes between political parties. He submitted a statement from his sister, Annette Robinson. She stated that her family was "well known" because of her cousin, Jerome Haywood's, connections with the Labor Party. She stated

that People's National Party affiliates murdered Jerome Haywood around 2000, which led her family to flee Kingston. She asserted that the Jamaican deportees who knew Robinson in prison had spread word of his sexual orientation to people in Jamaica. She repeated Robinson's fears that, if removed, he would be tortured or killed because of his homosexuality and connection to their family.

Robinson submitted two other letters of support, from Erica Sewell and Georgett Campbell. Sewell asserted that people in Jamaica knew Robinson was gay and being deported, and that there was talk that Robinson would be killed if he returned. She stated that the police would not "have any say in anything" because Robinson was a deportee, and that the police would treat him badly because he was gay. Campbell's letter stated that Jamaican society was homophobic, the police did little to protect the gay population, and unnamed individuals told her that they hoped Robinson did not come back because Jamaicans would not tolerate his lifestyle. She stated that she believed Robinson would be killed in Jamaica because he was gay.

Further, Robinson submitted the U.S. Department of State's 2020 Human Rights Report for Jamaica. In the report, the State Department explained that the Labor Party was the controlling political party in Jamaica. Although the State Department found that the Jamaican government prosecuted officials who committed human rights abuses, it acknowledged "credible reports" of official unaccountability. Robinson also submitted several articles describing Jamaica's human rights conditions.

In the second document set, Robinson submitted three articles describing (1) the historical roots of Jamaica's gang problem; (2) how Jamaican gangs originated and their link to political parties; and (3) the partisan enclaves that divided Kingston in the 1970s and 1980s.

Finally, Robinson submitted a third document set containing the alleged death certificate of Shondel Haywood and accompanying statements of Robinson's relative. His relative alleged Robinson was a known member of the LGBTQ community. Because of this, she alleged, Robinson's family received constant threats from known area leaders, and authorities had turned a blind eye to the threats.

In response, the government submitted the U.S. Department of State's 2019 Human Rights Report for Jamaica, which found that, although Jamaica had a law prohibiting consensual same-sex sexual activity, the government had not enforced the law in 2019. The 2019 report also documented one instance in Montego Bay during which police lacked the resources to effectively control a homophobic mob.

The immigration judge held a removal hearing. Robinson acknowledged that his drug conviction barred his eligibility for asylum and withholding of removal. The immigration judge heard testimony from Robinson and Annette Robinson, which was consistent with the textual record.

After the removal hearing, the immigration judge issued an oral decision denying Robinson's CAT claim. Although the immigration judge found the testimony credible, the judge also found that the statements lacked specificity, referenced threats made only to Robinson's family rather than Robinson himself, and did not state who was making the threats or what the contents of the threats were. Thus, although the immigration judge credited the statements, the judge gave them limited weight. Further, the immigration judge found the conditions evidence was too old to garner significant weight and reasoned that the recent change in Jamaican government casted doubt over much of the older country conditions still exist.

The immigration judge stated that an applicant for relief under CAT must show that it is more likely than not he will be subjected to torture in the country of removal by, or at the instigation or with the acquiescence of, a public official or one acting in an official capacity. The immigration judge found Robinson had not satisfied this burden.

As to Robinson's claim premised on his sexual orientation, the immigration judge concluded that, even if the Jamaican community learned of Robinson's deportation, there was an insufficient likelihood of torture or the government turning a blind eye to torture to warrant CAT relief. Regarding Robinson's claim premised on his political affiliation, the immigration judge determined it was unlikely that the Labor Party, the current ruling party of Jamaica, would harm its own supporters. Because Robinson

admitted his removability and did not prove that he was eligible for CAT deferral of removal, the immigration judge ordered him removed to Jamaica.

Robinson appealed to the BIA and argued that the immigration judge: (1) failed to consider all compelling and relevant evidence; (2) applied the wrong legal standard for consent or acquiescence of torture by a public official; and (3) did not sufficiently address whether his family's political affiliation would increase the likelihood that he would be tortured in Jamaica.

The BIA adopted the immigration judge's decision and dismissed Robinson's appeal. The BIA agreed that Robinson did not demonstrate past torture and held that the immigration judge (1) considered all of the evidence in the case, paying particular attention to the issues and evidence related to Robinson's sexual orientation; (2) specifically cited to the State Department report, as well as Robinson's own evidence, when it found that government authorities were not refusing to protect people seeking protection; (3) cited and applied the correct legal standard for official consent and acquiescence of torture; and (4) fully considered Robinson's political affiliation claim. The BIA concluded, after considering the entirety of the record and the risk of torture in the aggregate, that the immigration judge was correct that Robinson had not met his burden that it was more likely than not that he would be tortured in Jamaica. Robinson timely appealed.

## II.

Robinson argues that the BIA and immigration judge erred by denying his CAT application. Specifically, Robinson maintains that the BIA and immigration judge used incorrect legal standards in determining whether a government acquiesces in torture and by requiring Robinson to prove that the Jamaican government was involved in torture. Additionally, Robinson argues that the immigration judge failed to analyze his "mixed motive" claim and failed to give reasoned consideration to the evidence. Robinson argues that the immigration judge was incorrect in determining that much of the evidence that Robinson submitted lacked specificity, because the evidence showed, and he and Annette Robinson testified to, specific instances of threats and violence.

When the BIA issues a decision, we review only that decision, except to the extent the BIA expressly adopts the immigration judge's decision. *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1344 (11th Cir. 2007). When the BIA agrees with the immigration judge's findings but makes additional observations, we review both decisions. *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009). We have jurisdiction to review whether the BIA gave reasoned consideration to a non-citizen's CAT claim. *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1231 (11th Cir. 2013).

Because the BIA expressly adopted the immigration judge's decision, we review both the BIA's and immigration judge's factual findings concerning CAT relief, beginning with the substantial

evidence test. *See Alim v. Gonzales*, 446 F.3d 1239, 1255–57 (11th Cir. 2006). Claims that the agency failed to give reasoned consideration or applied the wrong legal standard to an issue are questions of law that we review *de novo. Jeune v. U.S. Atty. Gen.*, 810 F.3d 792, 799 (11th Cir. 2016). In a reasoned-consideration examination, we ask whether the agency considered the issues raised and announced its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted. *Id.* at 803.

An applicant for CAT relief must show that it is more likely than not that the applicant would be tortured if returned to the proposed country of removal. *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004). To constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering. 8 C.F.R. § 1208.18(a)(5). Additionally, an applicant must show that the torture would be by, or with the consent or acquiescence of, a public official or person acting in an official capacity. *Id.* § 1208.18(a)(1); *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1293 (11th Cir. 2020).

In assessing a CAT claim, the BIA need not specifically address each claim and each piece of evidence presented, so long as it gives reasoned consideration to the application and makes adequate findings. *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1232 (11th Cir. 2013); *see also Malu v. U.S. Att'y Gen.*, 764 F.3d 1282, 1293 (11th Cir. 2014) (holding that the immigration judge and BIA gave reasoned consideration to applicant's CAT claim after

exhaustively considering her application for withholding of removal on the same facts).

The immigration judge and the BIA applied the proper standard under 8 C.F.R. §§ 1208.16–.18, by requiring Robinson to establish that he would be subjected to torture in Jamacia by, or at the instigation or with the acquiescence of, a public official or one acting in an official capacity. Additionally, we cannot say the BIA and immigration judge erred in assessing Robinson's risk of torture both for his sexual orientation and his political affiliation in the aggregate. Therefore, neither the immigration judge nor the BIA erred in analyzing Robinson's CAT relief application under our precedent. See Reyes-Sanchez, 369 F.3d at 1242; see also Bernard v. Sessions, 881 F.3d 1042, 1048 (7th Cir. 2018) (holding that a similar record did not compel "the conclusion that [a gay alien] is at a substantial risk for torture [in Jamaica]").

Further, despite Robinson's contrary characterizations, the BIA and immigration judge gave reasoned consideration to Robinson's CAT claim. See Jeune, 810 F.3d at 803. A review of the BIA's and immigration judge's opinions indicate that they considered all the evidence in the case. In particular, their opinions relied on the evidence and testimony related to Robinson's sexual orientation including treatment of the LGBTQ community in Jamaica, and evidence and testimony related to political violence in Jamaica.

In sum, the immigration judge and BIA used the correct legal standard in denying Robinson's CAT application and provided reasoned consideration.

21-13822             Opinion of the Court                    11

## III.

**PETITION DENIED.**